[No. 32856. *En Banc.* February 8, 1955.]

GEORGE W. MILLER, *Respondent,* v. TIETZ CONSTRUCTION COMPANY et al., *Appellants.*[1]

[1]Reported in 279 P. (2d) 641.

*Carl H. Skoog,* for appellants.

*Eisenhower, Hunter, Ramsdell & Duncan,* for respondent.

HAMLEY, C. J.—George W. Miller, the vendee of Tacoma residence property, brought this action to recover damages for fraud. He alleged that it was falsely represented to him that all improvements then in place for which local improvement district assessments had been or would be made were paid, and that there were no local improvements in the area for which the above-described property would be assessed.

Building Center, Inc., the vendor, Harry S. Rinker, stockholder and agent of vendor, and Rinker's wife were named defendants. Tietz Construction Company was later substituted for Building Center, Inc. Defendants' answer was a general denial.

After a nonjury trial, judgment in the sum of $1,272.40 was entered for plaintiff. Defendants appeal.

The assignments of error present these questions: (1) Were actionable misrepresentations as to assessments made prior to the execution of the real-estate contract? (2) Were misrepresentations as to assessments made after execution of the real-estate contract and prior to acceptance of the title by Miller? (3) As to representations, if any, made after execution of the real-estate contract, was the element of reliance lacking? (4) Was there a right to rely upon representations as to assessments made after respondent had employed an attorney to assist him in closing the transaction?

Turning to the first of these questions, the trial court found that misrepresentations of the kind alleged were made and relied upon "in connection with the negotiations for the sale of the above described property. . . ." We do not regard this as a finding of fact to the effect that misrepresentations were made prior to the execution of the real-estate contract. Evidence had been received concerning

representations made both before and after execution of the contract.

In the absence of an explicit finding of fact as to when the asserted misrepresentations were made, we have examined the evidence. Miller and Rinker were the only witnesses to testify regarding the negotiations prior to the execution of the contract. Their testimony is in direct conflict.

Miller testified that he told Rinker he did not want his total expense to exceed fifteen thousand dollars, and that, to meet this condition, the seller absorbed some costs which normally would be paid by the purchaser. He further testified that he made direct inquiry of Rinker as to whether the assessments were in, and that Rinker said everything was in, except that there would be a sewer project sometime in the future. Rinker testified that fifteen thousand dollars was mentioned as "more or less a round figure," and that both parties agreed there were other items Miller was going to buy in the way of furniture and appliances. Rinker further testified that Miller did not ask him if the improvements were paid.

■■ The burden was upon respondent to prove the elements of his case by clear, cogent, and convincing evidence. In view of the direct conflict in the evidence, we cannot say that respondent proved that actionable misrepresentations were made prior to the execution of the contract.

■ This brings us to the second question referred to above. With regard to what transpired after the contract had been executed, we believe that the trial court's finding that representations concerning assessments were made is supported by clear, cogent, and convincing evidence. Both Miller and his attorney testified that such representations were made during the meeting called for the purpose of considering the title report. Rinker testified to the contrary, but we cannot say that the trial court erred in accepting the testimony of Miller and his attorney and rejecting that of Rinker.

The third question which confronts us is whether, as to these representations made after execution of the real-estate contract and prior to the final closing, the element

of reliance was lacking. Stated differently, having already entered into the real-estate contract, is Miller in a position to predicate a fraud action on misrepresentations thereafter made?

The contract is denominated an "Earnest Money Receipt," but it contains all of the usual provisions of a binding contract of purchase and sale. It provides that, if the purchaser fails to carry out the contract, the earnest money shall be forfeited at the option of the seller, "or the seller may demand and enforce specific performance of this contract." The contract provides that the vendor will convey the property "free of encumbrance to date hereof . . ."

Under the terms of the contract, the only circumstance under which the vendee could, without liability, decline to complete the sale would be if the vendor could not furnish a marketable and insurable title. As to this, the contract provides:

"Title is to be shown by title insurance report furnished by the seller within 10 days. Five days shall be allowed for the examination thereof. If title is not marketable or insurable and cannot be made marketable or insurable within one hundred twenty days from receipt of written notice of any defect, this agreement shall be void, and the earnest money shall be refunded. . . ."

A title report was thereafter obtained by appellant. It showed no assessment liens, but noted some other exceptions. These exceptions were discussed at a meeting held subsequent to the execution of the contract, and were satisfactorily disposed of.

At the time of this meeting, respondent could not have withdrawn from the real-estate contract without incurring liability. This is true, because the vendor had furnished marketable and insurable title, which was then the only open question. The local improvement district charges in question did not become a lien upon the property until several months later, when the assessment rolls were placed in the hands of the city treasurer for collection. RCW 35.50.010 [cf. Rem. Rev. Stat. §§ 9372, 9376, part]; *Knowles v. Temple,* 49 Wash. 595, 96 Pac. 1.

It follows that respondent was not prejudiced by any representations made at the meeting to consider the title report, for he did nothing in reliance thereon which he was not already bound to do. In this respect, the situation was unlike that which existed in *Grosgebauer v. Schneider,* 177 Wash. 43, 31 P. (2d) 90. In that case, the misrepresentations were made after the vendee had paid an initial sum of fifty dollars "to bind the bargain," but before a contract had been entered into, and before the parties were bound to do anything.

Nor is the present case comparable to *Petersen v. Graham,* 7 Wn. (2d) 464, 110 P. (2d) 149, where the representation was held to be "but a link in the chain of events" constituting the whole transaction. Here, the transaction, except for the possibility of existing encumbrances, was complete before the representations were made. As before indicated, the assessment charges were not, at that time, encumbrances against the property.

Neither in the trial court nor in this court has respondent advanced the theory that, prior to execution of the contract, the vendor was, by reason of the existing circumstances, under a duty to disclose the existence of the unpaid local improvement district charges. We therefore have not considered whether an action for fraud could have been maintained on such a theory.

The views expressed above make it unnecessary to consider the indicated fourth question presented by the assignments of error.

The judgment is reversed.

MALLERY, HILL, DONWORTH, WEAVER, and OTT, JJ., concur.

FINLEY, J. (dissenting)—The majority opinion, among other things, poses the question of whether misrepresentations regarding property assessments were made *prior to the execution* of the real-estate contract involved in this case. In this connection, the opinion points out that the findings of the trial court state that misrepresentations of the kind alleged were made and relied upon "in connection with the negotiations for the sale of the above-described prop-

erty." The opinion reaches the conclusion that the findings *are not explicit* as to whether the misrepresentations were made *before or after* consummation of the real-estate contract involved in the case. The opinion then states it is necessary to turn to the evidence to ascertain the significance of the trial court's finding No. VI, and points out that the testimony of the purchaser was in direct conflict with that of the seller respecting the matter of property assessments. It is then said that the burden was upon the purchaser to prove his case by clear, cogent, and convincing evidence; that, in view of the conflict in the evidence, the majority cannot say that the purchaser proved by clear, cogent, and convincing evidence that actionable misrepresentations were made *prior to the execution of the contract*. It seems to me that in working out this line of reasoning the majority entirely by-pass the trial court and its functions in this matter.

If the findings of the trial court are not sufficiently explicit, I think that the case should be sent back for adequate, clear-cut, specific findings, and that it should not be assumed here that the findings must be construed in a manner that they do not support the ultimate result reached by the trial judge. *Bowman v. Webster*, 42 Wn. (2d) 129, 135, 253 P. (2d) 934. Actually, disposition of the matter on this basis would require granting a new trial, because the Honorable Hugh J. Rosellini, who tried the case in the superior court, has been elected and is now a member of the supreme court of this state.

If, as the majority point out, the testimony of the purchaser and the seller was in direct conflict, it seems to me that, unless something more can be said about the testimony of the parties, it is a somewhat violent assumption to conclude that the purchaser failed to prove his case by clear, cogent, convincing evidence. In view of the conflict in the testimony, it is essentially a matter of which witness the trial judge thought was telling the truth. *Mathewson v. Carlson*, 13 Wn. (2d) 363, 368, 125 P. (2d) 272. The purchaser's testimony was certainly quite positive that the seller told him before the sale, and before execution of the

contract, that improvements were in and that no improvements would be forthcoming, unless sewer improvements were undertaken in the future. I think that the purchaser was referring to liability for the payment of assessments in connection with property improvements, that his testimony was clear; that it was cogent and convincing, depending solely on whether he or the seller was to be believed,—furthermore, it seems to me that the trial court was entitled to believe the purchaser.

At the conclusion of the purchaser's case, a motion was made by the seller for nonsuit on the ground that it had not been proved that the misrepresentations had been made prior to the consummation of the real-estate contract. The statement of facts shows that there was some reference to the fact that a *McKelvey* case was controlling on the legal question involved. (The case, if it exists, was not cited by either party in the briefs on appeal.) The motion in behalf of the seller was denied. This clearly indicates that the trial court was well aware of the significance of the testimony as to whether there had been any misrepresentation *prior to the execution* of the contract, and the theory of appellant respecting this aspect of the case.

Error is assigned to the refusal of the trial court to enter certain findings proposed in behalf of the seller. Seller's proposed, but rejected, finding No. VI reads as follows:

"*That no representations were made by the said* HARRY S. RINKER *that all improvements then in place for which local improvement district assessments had been or would be made, were paid, and that no representation was made that there were no local improvements in the area for which the above described property could be assessed, and that plaintiff does not contend that any such representations were made until after execution of the earnest money agreement for the purchase and sale of the same;* that the plaintiff had an opportunity to observe and did observe construction work on the streets adjoining said property on the day prior to the execution of the said earnest money agreement." (Italics mine.)

Seller's proposed, but rejected, finding No. VIII reads as follows:

"That the plaintiff knew prior to purchase of said property that the same was subject to assessment for local improvements which had not then become a lien against said property."

Error is assigned to finding of fact No. VI, which actually was made or entered by the trial court.

The *refusal* of the trial court to enter the above-quoted, *proposed* findings of fact of the seller clearly indicates to me the meaning to be ascribed to finding of fact No. VI, as made and entered by the trial court. The first portion of this latter finding reads:

"That in connection with the negotiations *for the sale* . . . it was represented by the said HARRY S. RINKER *that all improvements* then in place for which local improvement district assessments had been or would be *made were paid* . . . ." (Italics mine.)

This language means to me that the misrepresentations were made in connection with "the negotiations for the sale," or *in anticipation of the sale*. The sale obviously did not occur or was not consummated until a binding contract was executed. If the finding referred to negotiations after the sale (consummation of the real-estate contract), it would have referred to "negotiations *after*," or *"following* the sale." Furthermore, the language of finding No. VI, emphasized above, considered together with the language of the findings refused by the trial court, convinces me that finding of fact No. VI clearly related to misrepresentations *made prior to the execution of the real-estate contract*; that the parties discussed and that misrepresentations were made regarding *liability for the payment of assessments* for property improvements. This reasoning is strengthened considerably by the fact that the seller had previously attempted to make a sale of the particular property to the same purchasers (respondents) but had been unsuccessful in his efforts. Respondent Miller testified that he told appellant Rinker that he did not want his *total* expense to exceed fifteen thousand dollars, that to meet this condition the seller absorbed some costs which normally would be paid by the purchaser. Apparently, the seller reduced the price, negotiations were

resumed, and a sale was consummated. In other words, price or total cost to the purchaser was a very significant matter, and both parties knew this. The conclusion I would reach in this matter seems inescapable to me considering (a) the findings refused, and those entered by the trial court, (b) the record made in trial court and now before us, (c) the theories of the case presented to the trial court by the seller, the trial court's decision thereon, and (d) denial of the motion for nonsuit.

As indicated hereinbefore, if there is doubt about the meaning of the crucial finding of fact No. VI of the trial court, ordinarily the case should be sent back for more adequate and specific findings. Aside from this, the contentions of respondent are quite compelling that finding No. VI relates to the matter of the making of *significant* misrepresentations prior to the consummation of the real-estate contract; that the evidence relative to the finding is in conflict; that the trial court had a right to believe the testimony of the purchaser; that the evidence cannot be said clearly to preponderate against the trial court's finding. For the foregoing reasons, I am compelled to dissent.

SCHWELLENBACH, J., concurs with FINLEY, J.

ROSELLINI, J., did not participate.

[*En Banc.* May 9, 1955.]

PER CURIAM.—Upon a second rehearing *En Banc*, a majority of the court adheres to the *En Banc* opinion heretofore filed herein.