[No. 38660. En Banc. January 26, 1967.]

PIERCE COUNTY, *Appellant,* v. THE TAXPAYERS OF LAKES
DISTRICT RECREATION SERVICE AREA, *Respondents.**

*John G. McCutcheon* and *Edwin J. Wheeler,* for appellant.

*Conrad, Kane & Vandeberg* and *Elvin J. Vandeberg,* for respondents.

WEAVER, J.—Pursuant to the provisions of Laws of 1963, chapter 218 (RCW 36.68) a petition was filed with the Board of County Commissioners of Pierce County for the formation of the Lakes District Recreation Service Area. The boundaries of the proposed Recreation Service Area are coextensive with the boundaries of Clover Park School

*Reported in 423 P.2d 67.

District No. 400. The area is only a portion of the geographical area of Pierce County and the taxable real and personal property of the county.

The petition, signed by the requisite number of registered voters within the proposed Recreation Service Area, triggered an authorized statutory chain reaction.

These events followed: (1) a "feasibility report" was submitted (RCW 36.68.440); the county commissioners ordered a public hearing (RCW 36.68.440); notice of the hearing was published; the public hearing was held; the commissioners approved the (a) feasibility report; (b) the initial cost; and (c) objectives and boundaries of the area.

The commissioners ordered a special election (RCW 36.68.470) by the voters of the Recreation Service Area to determine whether the area should be formed and whether $1,000,000 in general obligation bonds should be authorized to finance the purposes of the area. (RCW 36.68.470).

The election was held; the required number of voters voted. They approved the "area" and the issuance of the $1,000,000 bond issue.

Pursuant to RCW chapter 7.25 (Declaratory Judgments of Local Bond Issues) the prosecuting attorney of Pierce County sought a declaratory judgment to determine the validity of this bond issue.

The ultimate question is the validity of the $1,000,000 bond issue as it was submitted to and authorized by the voters of the proposed Lakes District Recreation Service Area.

The trial court found the bond issue invalid and enjoined its issuance.

We agree and affirm the decree entered by the trial court. Our reasons for so doing are set forth in a portion of the exhaustive and well-considered written decision of the trial judge, which we adopt as the opinion of this court.

The trial judge said:

"This is an action brought to determine the validity of bonds which the Board of County Commissioners seek to

issue pursuant to the authority of RCW 36.68.400 et seq. relating to Park and Recreation Service Areas.

"The defendant taxpayers have raised six objections denominated affirmative defenses. The fourth and fifth of such objections have not been pressed.

"The first defense objection challenges the constitutionality of the statute as violative of Art. VII, § 1 as amended by Amendment XIV, and Art. VII, § 9, on the ground that the tax to be levied is not uniform on all properties of the class within the territorial limits of the authority levying the tax.

"The second defense is that the statute violates Art. XI, § 12 of the Washington State Constitution because it unlawfully delegates to the plaintiff the power to tax for the benefit of another municipal corporation.

"The third defense is that the statute and bonds proposed to be issued contravene the provisions of Art. VII, § 2 of the Washington State Constitution as amended by Amendment XVII in that the statute permits, and these bonds are not in fact issued 'solely for capital purposes,' but are in fact to be issued in part to provide for current operational expenses.

"The sixth defense is that if the levy is construed as a local improvement assessment, that it is invalid as violative of the fourteenth amendment of the United States Constitution.

■■ "Considering first the sixth defense, it is argued by Pierce County that although the statutes, particularly RCW 36.68.480 through 36.68.520 refer to tax levies, that the words were perhaps inartfully selected, and that the legislature was really intending to permit a levy in the nature of a local improvement assessment based upon the benefits to the property in the service area. This argument is ingenious but not convincing in view of the provisions of the earlier and closely related Recreation District Act, RCW 36.69.010 et seq., which provides for a similar method of issuing bonds and redeeming them with ad valorem tax revenues, and also provides for a complete system of L.I.D. financing based upon the procedure which is usual in this

state of relating the amount of the assessment to the benefit accruing to the specific property assessed.

"With this type of legislation already on the books, an inference that the legislature was confused in its terminology when it enacted the later statute is not warranted. The levy in question here is an ad valorem tax, not a local improvement assessment. Moreover even if it were a local improvement assessment, it would be invalid under the very recent decision of *Heavens v. King County Rural Library District,* 66 Wn.(2d) 558, [404 P.2d 453 (1965)], in which case it was said that the benefit to the land assessed must be actual, physical and material, and not merely speculative or conjectural.

"In the present case the expert witnesses as to valuation presented by the county, expressed opinions that the facilities proposed would benefit the property assessed or taxed, but declined to venture any opinions as to how much this benefit would represent in terms of dollars or percentage. Based on the evidence offered, the Court can only speculate as to whether the benefit to a particular piece of property would be substantial or merely nominal.

"Both witnesses for the county did concede that the benefit would vary inversely with the distance from the facility, thus making it clear that though the assessments (if they could properly be so termed) would be equal for every dollar of valuation, the enhancement in value to particular property would not be equal, thus presenting even under the assessment theory, a serious constitutional question.

■ "The third affirmative defense must in my opinion be upheld, and will dispose of the case presently at hand. Art. VII, § [2] of the Washington State Constitution, as amended by Amendment XVII, provides:

' * * * Such aggregate limitation or any specific limitation imposed by law in conformity therewith may be exceeded only

·(a) * * *

·(b) By any taxing district otherwise authorized by law to issue general obligation bonds for capital purposes,

for the sole purpose of making the required payments of principal and interest on general obligation bonds *issued solely for capital purposes,* * * *'

"RCW 36.68.520 provides substantially for the same limitation:

'A service area shall not have power to levy an annual authorized levy, but it shall have the power to levy a tax upon the property included within the service district in the manner prescribed for cities for the purpose of exceeding the limitations established by section 2, article 7 as amended by Amendment 17 of the Constitution * * *.'

"Unfortunately RCW 36.68.420 uses broader language:

'Any resolution or petition initiating a local service area shall set forth the boundaries of the service district with certainty, describe the purpose or purposes for which the service area is to be formed, contain an estimate of the initial cost of any capital improvements or services to be authorized in the service area.

' "Initial costs" as used herein shall include the estimated cost during the first year of operation of:

'(1) * * *

'(2) * * *

'(3) * * *

'(4) Personnel, maintenance or operation of any county park facility within the service area as specified by the resolution or petition.'

"Pursuant to this statute, the feasibility studies and the resolutions of the Board of County Commissioners assume that some operating costs can properly be paid from the proceeds of the bond issue, and the proposition submitted to the voters in effect so provides.

"In the feasibility study, Exhibit 'B' attached to the complaint, the following language appears:

'The nice feature of the parks and recreation services area law requires a first year budget for maintenance and operation to be set aside as part of the indebtedness against the project.'

"Exhibit 'D', the Notice of Hearing, states:

'The Lakes District Recreation Service Area shall also finance the purchase of athletic equipment and supplies,

and the costs of engaging personnel at said recreation facilities. The estimated initial cost of capital improvements and services in the Lakes District Recreation Service Area will be One Million Dollars ($1,000,000.00).'

"Exhibit 'E', Pierce County Resolution No. 10301, which determines the feasibility, initial costs, objections and boundaries of the proposed service area, states:

'The Service Area shall also finance the costs of engaging a recreation supervisor, assistant aquatics specialist, engineer, custodial help, lifeguards, swim instructors, clerical personnel, and other necessary recreation personnel. The initial cost of capital improvements, recreation equipment, supplies and personnel services in the Lakes District Recreation Service Area during the first year of operation will be One Million Dollars ($1,000,000.00).'

"Likewise, in Exhibit 'F', which is the resolution authorizing the special election and the issuance of the bonds, it is stated:

' *   *   * for the purpose of submitting to said voters the question of whether or not general obligation bonds in the amount of One Million ($1,000,000.00) Dollars shall be issued, and the proceeds thereof expended to finance recreation facilities, improvements and/or services in the Lakes District Recreation Service Area.

'Section 2.   *   *   *

'Section 3. The Lakes District Recreation Service Area is to be formed for the purpose of providing a community center for the residents of the Lakes District Area, Pierce County, Washington, and said recreation area shall finance the acquisition of building sites, construction of a community center building, construction of swimming pools, tennis courts, playfields, purchase of athletic and recreation equipment and supplies, and other capital improvements and/or services.'

"And finally the ballot title provides:

'PROPOSITION No. 1

FORMATION OF LAKES DISTRICT RECREATION SERVICE AREA

'Shall the Lakes District Recreation Service Area be established for the area described in County Resolution No. 10301, of the Board of Commissioners of Pierce County, adopted on the 15th day of September, 1964, to

provide financing for recreation facilities, construction of a community center building, improvements and services?

\* \* \*

'Proposition No. 2
Special Bond Issue

'Shall the Board of Pierce County Commissioners, for the purposes of the Lakes District Recreation Service Area, issue One Million ($1,000,000.00) Dollars of general obligation bonds for a period of not to exceed twenty years and levy a tax of approximately 2 mills annually upon all taxable property in said Service Area to pay the interest on and to retire said bonds; said levy to be excess of the forty mill tax limit?'

"These documents taken altogether clearly indicate an intention on the part of the bond issuing authority to pay maintenance and operation costs out of the proceeds of these bonds. This contravenes the provisions of Art. VII, § [2], as amended by Amendment 17 of the Washington State Constitution.

"The services to which reference is made in the quotations above set forth clearly must be equated with the term 'Maintenance and operation.'

"In *State ex rel. Finance Committee v. Yelle*, 33 Wn. (2d) 940, [207 P.2d 730,] the Court recognized that an effort to authorize bonds under a similar ballot title combining capital and operating and maintenance purposes was ineffective, and despite the laudable purposes involved in the present undertaking, it must be held that the bonds are invalid because they are not issued 'solely for capital purposes.'

"The foregoing disposes of the only question directly before the court, namely, whether or not these bonds are invalid."

Thus there are stated sufficient reasons to sustain the decree of the trial court.

In fairness, however, we believe that we should set forth the reasoning and impressions of the trial court upon additional facets of the case presented by other defenses. The trial court continued:

"It may not be amiss to observe, however, that under the first and second affirmative defenses, serious questions are raised concerning the constitutionality of the entire Park and Recreation Service Area statute. Particularly is a difficult question presented in determining what constitutes the authority levying the tax. As long as the cases of *Roth v. Drainage Improvement District #5*, 64 Wn. (2d) 586, 392 P. (2d) 1012, and *Linn v. Walla Walla County*, 99 Wash. 224, 169 Pac. 323, are a part of the decisional law of this state, it is probable that the 'taxing district' must be construed to be the county rather than the recreation service area. These cases give considerable weight to the argument urged by the taxpayers that the tax proposed here would indeed violate Art. VII, § 1 as amended by the Fourteenth Amendment, and Art. VII, § 9, in that the tax would not be uniform on the same class of property within the geographical limits of the authority levying the tax.

"It is unfortunate that the legislature has not seen fit to empower a county such as Pierce County to use the machinery provided by RCW 36.69 et seq. so that a clearly defined separate municipal corporation could undertake the recreational program which is evidently desired by the majority of the residents of the Lakewood area."

The record is not such that we are called upon to decide where the concept of assessment by local improvement districts falls upon the legal spectrum of permissible and nonpermissible special assessments. This presents a question for another day.

The judgment is affirmed.

HILL, DONWORTH, ROSELLINI, OTT, HUNTER, and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

FINLEY, C. J. (concurring in the result)—I concur in the result reached in the majority opinion. This is on the basis that the proposal re issuance of bonds in fact contemplates and authorizes expenditure of bond proceeds for other than capital purposes. I reserve judgment on the other issues discussed in the majority opinion.