[No. 113-40671-1.    Division One.    October 15, 1969.]
Panel 1

WILLIAM A. DORSEY *et al., Respondents,* v. PETE SPEELMAN *et al., Appellants.*

*William A. Stiles, Jr.,* for appellants.

*John A. Ward,* for respondents.

JAMES, C. J.—Defendants (appellants) leased an 80-acre dairy farm from the plaintiffs (respondents) for a period of 5 years. After the expiration of the lease, plaintiffs brought this action for damages to the real property, alleg-

ing waste committed thereon. For a number of the items, plaintiffs sought treble damages under RCW 64.12.020, which provides in part:

> If a . . . tenant . . . of real property commit[s] waste thereon, any person injured thereby may maintain an action at law for damages therefor against such . . . tenant . . . in which action, if the plaintiff prevails, there shall be judgment for treble damages, . . .

The trial was without a jury. The trial judge found that the defendants had both "committed" and "permitted" waste. Finding of fact No. 4 describes 10 items of damage; five are categorized as commissive waste. For these items the judge awarded treble damages.

The only error urged by defendants is the award of treble damages. Their argument is that exemplary or punitive damages are not favored in the law and that a statute which permits them must be strictly construed. Defendants find support for this contention in *DeLano v. Tennent*, 138 Wash. 39, 47, 244 P. 273, 276 (1926) wherein it is stated:

> This court early in its history announced the doctrine that the rule allowing recovery of exemplary and punitive damages was unsound in principle, and held that such damages were not recoverable in this jurisdiction, unless expressly so provided by statute. . . . [T]he statute permits recovery in treble damages only where the waste is wilful and wanton, . . .

The statute referred to in *DeLano* was the precursor of, RCW 64.12.020. It was amended in 1943. Prior to amendment, the statute provided that for waste committed by a tenant, there *may* be judgment for treble damages. The effect of the amendment was determined in *Graffell v. Honeysuckle*, 30 Wn.2d 390, 401, 191 P.2d 858, 865 (1948).

> In our opinion, the legislature, in enacting the amendatory act of 1943 (Rem. Supp. 1943 § 938), intended to provide, and did provide, that where a . . . tenant . . . of real property *commits* waste thereon, that is, does some voluntary destructive act, the person injured thereby may maintain an action for damages against the

offending party; and if the injured party prevails in such action the judgment *shall be* for treble damages, . . . (Italics in original.)

The court in *Graffell,* at 398, also defined "waste" as contemplated by the statute and discussed the distinction between "commissive" and "permissive":

> "Waste," as understood in the law of real property and as variously defined by this court, is an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession which results in its substantial injury. It is the violation of an obligation to treat the premises in such manner that no harm be done to them, and that the estate may revert to those having an underlying interest undeteriorated by any willful or negligent act. [Citations omitted.]
>
> Waste may be either voluntary or permissive. Voluntary waste, sometimes spoken of as commissive waste, consists of the commission of some deliberate or voluntary destructive act, such as pulling down a house, or removing things fixed to and constituting a material part of the freehold. Permissive waste implies negligence or omission to do that which will prevent injury, as, for instance, to suffer a house to go to decay for want of repair or to deteriorate from neglect.

It is defendants' contention that the evidence upon which the trial judge based his finding that the defendants "committed" rather than "permitted" waste does not satisfy the standard of strict statutory construction. The largest separate item for which there was an award of treble damages involved a small cabin near the farm house occupied by the defendants. The trial judge's finding concerning the cabin was as follows:

> That during defendants' use and occupancy of the premises, they did commit and permit numerous acts of waste to and upon the premises, consisting of the following and for which the court finds plaintiffs have been damaged in the following amounts:
>
> (a) By destroying the interior of a small house located upon said premises, tearing out walls and ceilings, destroying cabinets and ripping out wiring, and other

acts of damage therein to the extent that said house was damaged and would require $1,366.00 to repair, exclusive of roof damage caused by a windstorm, and the court further finds said damage constitutes commissive waste and awards treble damages therefor in the amount of $4,008.00. [*sic*] That casualty damage to the roof and interior of said house, as a result of wind and rain, was minimal and is felt by the court to be covered by the allowance of $75.00 which was testified to as the cost of repairing the said roof.

Except for one witness who testified that he saw a relative of defendants throw materials out of a broken window of the small house, there was no direct evidence as to the identity of the person or persons who actually perpetrated the destruction found by the trial judge to constitute commissive waste. But the trial judge found that the circumstantial evidence strongly suggested that the destruction in each case was either the act of the defendants or was committed with their knowledge and approval. With reference to the small house, the trial judge made this observation in his oral opinion:

I cannot believe that sort of damage was caused by a windstorm. . . . [T]he type of damage that appears in Plaintiffs' 13 and 14 is just plain malicious damage. . . .

While I do not believe that Speelman is [defendants are] responsible for windstorm damage to the roof, it is a little hard to believe that a windstorm took out all of the windows and window sashes. It just doesn't ring true. I can't believe that a water tank could be ripped out, or cupboards torn off the walls by anything other than a person deliberately doing it.

In his written memorandum opinion following argument of the motion for a new trial, the trial judge referred to the damage to the small house as follows:

The court is firmly convinced (with the exception of some minor storm damage to the cabin roof) the destruction of the cabin interior was wilful, intentional and voluntary. It would be impossible to conclude that a water tank could be ripped out, walls completely torn down,

cupboards torn off the wall, wiring stripped out of the building, sink torn out and the other extensive damage be done by other than voluntary, wilful, and intentional acts of some person or persons.

These observations were typical of the judge's comments concerning other items of damage which he found to be commissive.

Defendants argue that the damage could have been done by third persons without defendants' knowledge. This contention the trial judge disposed of with the following language in his written memorandum:

Furthermore, the cabin was but a short distance from the house and also a very short distance from the barn and other outdoor buildings used by the defendants everyday of the year.

If the defendants are to be believed about the time they spent working in and about the farm and the barns (near the cabin), the court must find they were probably in the area of the cabin approximately 365 days out of the year during the entire term of the lease.

The type of damage that was done to the cabin could not have gone unnoticed by anyone in the vicinity of the cabin. The damage was so extensive that it would have caused considerable noise to carry out and would have required too much effort on the part of some person or persons to do it secretly or unnoticed. Furthermore, one witness testified he saw a relative of the defendants throwing things (of the kind with which we are here concerned) out a broken window of the cabin.

It is not logical to assume the defendants did not know of the destruction going on. It was too extensive and of such a nature that a person who was in the vicinity for 365 days a year would be compelled to know, unless they intentionally sought to ignore what was going on.

■■ In each instance in which the trial judge awarded treble damages, he found that the damage was the result of something more than neglect. The concept of "commissive" waste does not require proof of a solitary personal performance by the tenant in possession. A perpetrator of waste can act through an agent or participate as an aider and

abettor. The judge's finding that the waste was "committed" either by the defendants or with their knowledge, encouragement or consent, is supported by substantial evidence. It will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959), *John R. Hansen, Inc., v. Pacific Int'l Corp.,* 76 Wn.2d 220, 455 P.2d 946 (1969).

The judgment is affirmed.

FARRIS and SWANSON, JJ., concur.