[No. 1597-1.　Division One.　December 17, 1973.]

WALLACE E. ALDER et al., *Respondents,* v. R. W. LOTTO, INC., *Appellant.*

Helsell, Paul, Fetterman, Todd & Hokanson, Russell V. Hokanson and Larry Setchell, for appellant.

Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle, Robert R. Beezer and Fred G. Cook, for respondents.

FARRIS, J.—The question at trial and on appeal is whether the sellers, Wallace E. Alder and Judith S. Alder, his wife, or the purchaser, R. W. Lotto, Inc., should pay two local improvement district (LID) assessments on certain real property sold pursuant to an agreement which provided for the proration of assessments as of the date of closing, but also required the sellers to convey free of liens. Lotto appeals the trial court's judgment for the Alders. We reverse.

The Alders acquired a real estate contract vendees' interest in the property here at issue in 1965. The improvements, LID No. 223, including the installation of water mains and fire hydrants, and LID No. 219, including sewer construction, were completed on May 13, 1969, and July 1, 1969, respectively. The assessments became liens on November 14, 1969, and September 24, 1969, respectively. See Miller v. Tietz Constr. Co., 46 Wn.2d 180, 183, 279 P.2d 641 (1955); Knowles v. Temple, 49 Wash. 595, 96 P. 1 (1908). On August 13, 1969, the parties entered into an agreement which gave Lotto a once renewable 6-month option to purchase the property for $100,000.

Lotto elected to exercise the option during its second 6-month term. The Alders were then told by the escrow officer that they must pay some $6,000 in LID assessments; they contended that the assessments should be prorated under the option agreement. After consulting an attorney, the Alders paid the assessments and closed the sale on

September 23, 1970, reserving the right to litigate the question of liability for the assessments.

The option agreement provided that prior to closing the optionors were to

> deposit in escrow . . . a real estate contract . . . conveying to Optionee the . . . property free of any liens, encumbrances or defects except such as may be approved in writing by Optionee, together with a fulfillment warranty deed.

The option agreement also provided:

> If this option is exercised and the title of the Optionors is insurable as herein provided, closing agent shall prorate taxes for the current year, assessments, if any, water and other utilities constituting liens as of the date of closing . . . ; Optionors shall pay any taxes imposed by any taxing authority on the transfer of said real property, together with the cost of title insurance.

The trial court found these two provisions to be in conflict and, in reliance upon *Colby v. Keene,* 84 Wash. 185, 146 P. 395 (1915), ruled that the special covenant providing for proration of assessments as of the date of closing controlled the general covenant providing for freedom from liens and that, therefore, Lotto must pay the portion of the LID assessments which came due after the date of closing.

The trial court correctly understood *Colby* to require that a special covenant prevails over a general covenant if the two are inconsistent. The issue, however, is whether the LID assessments in question are *capable of* proration. If so, the trial court correctly placed on Lotto the burden of paying the installments which came due after the date of closing.

RCW 36.69.200 provides that LID assessments may be paid in annual installments extending over a period not to exceed 20 years. Both assessments here were payable either at once or in 10 annual installments plus interest at 6 percent. The Alders elected to make installment payments. When the sale was closed on September 23, 1970, the first annual installment was due on LID No. 219 (sewers) and

eleven-twelfths of the first annual installment was due on LID No. 223 (water mains). It was on this basis that the trial court divided the burden of the assessments.

■    The installment method of paying LID assessments does not, however, provide a basis for proration. Pro rata means according to a measure which fixes proportions. It has no meaning unless referable to some rule or standard. *Hendrie v. Lowmaster,* 152 F.2d 83, 85 (6th Cir. 1945); *Chaplin v. Griffin,* 252 Pa. 271, 280, 97 A. 409, 412 (1916). There is no rule or standard by which LID assessments can be prorated. They are a single. charge for improvements whose full value is rendered at the time of installation, actually, physically and materially increasing[1] the market value of the affected real property. LID assessments therefore differ from annual real estate taxes, annually levied assessments, certain utility items, and other periodic assessments which are chargeable to specific time intervals. *See* RCW 84.09.010.

Two methods are available for dividing between seller and purchaser the burden of an LID assessment: specific assumption by the purchaser of all or a portion of the assessment or adjustment in the purchase price. Lotto did not specifically assume the burden of the LID assessments. Whether the parties considered the amount of the LID assessments in arriving at the purchase price is not reflected in the record, but even if they did not we cannot by construction correct the oversight.

The agreement explicitly provides for the transfer of title free of liens. The Alders, as owners of the property when the liens attached, must pay the LID assessments.

Reversed.

HOROWITZ and JAMES, JJ., concur.

Petition for rehearing denied April 9, 1974.

Review denied by Supreme Court June 24, 1974. ·

---

[1]*See Pierce County v. Taxpayers of Lakes Dist. Rec. Serv. Area,* 70 Wn.2d 375, 378, 423 P.2d 67 (1967); *Heavens v. King County Rural Library Dist.,* 66 Wn.2d 558, 564, 404 P.2d 453 (1965).