[No. 1234-3.    Division Three.    December 23, 1975.]

JAMES S. BLACK & COMPANY, INC., *Plaintiff*, KUHN REALTY COMPANY, *Respondent*, v. F. W. WOOLWORTH CO., *Appellant*.

*Hamblen, Gilbert & Brooke, P.S., Philip S. Brooke, Jr.,* and *Bogle & Gates,* for appellant.

*Delay, Curran & Boling* and *Joseph P. Delay,* for respondent.

MUNSON, J.—Defendant-lessee, F. W. Woolworth Co., appeals from a judgment in favor of the respondent-lessor, Kuhn Realty Company, Inc. The judgment resulted from a jury finding that the lessee breached a lease covenant to repair. Lessor cross-appeals, claiming additional damages are owing for an LID assessment and waste. We affirm.

In 1923, the lessor leased its only asset, the 5-story Kuhn Building, to the lessee for a period of 50 years. Two paragraphs of the lease are pertinent to this appeal: (a) paragraph 6 relating to the covenant to repair[1] and (b) paragraph 14 relating to the relationship of the parties in the event of destruction of the building[2]. In 1965, the upper

---

[1]"And the said Tenant further agrees to keep the said premises, both inside and outside, including structural repairs, alterations or changes, in good order, condition and repair at its own expense, which repairs, alterations or changes shall be in quality and class equal to the original work, and will not permit or suffer waste upon said premises or any part thereof, and to comply within a reasonable time with all present and future laws and ordinances, regulations and orders and any and all violations filed, instituted and enforced by city, county, state and federal governments, and of each and every department, bureau and official thereof, and any other bodies having jurisdiction in the premises."

[2]"And it is further agreed between the parties to these presents that in case the buildings erected upon said premises shall be partly or totally destroyed by fire or a casualty of any nature including explosion, earthquake, tornado or other act of God, subsequent to the date hereof or during the term herein provided, this lease will survive in such event, and the Tenant will re-build or repair the premises forthwith to their former state subject to the approval of the Landlord and

four floors of the building were vacated and the lessee requested the lessor's permission to demolish the four floors. The lessor responded, stating it would consider the possibility of demolition of those floors provided the lessee would submit plans for demolition, subject to approval by the lessor. The lessee subsequently elected not to demolish the upper floors.

In 1962, the lessee installed a new roof in an attempt to correct a leaking roof condition. The roof continued to leak, however, permitting rain water to enter the lower floors in spite of subsequent attempts to correct the condition. The leaking condition resulted in an obvious state of disrepair to the upper floors at the time of termination of this lease. The state of disrepair became such that the upper floors failed to comply with the local building codes.

In 1972, a preliminary LID assessment of $20,782.62 was projected to be levied against the property as the result of a local improvement district formed for the beautification and lighting of downtown Spokane. The trial court found that the lessee was not liable for payment of the LID assessment. This determination forms the basis of the lessor's cross-appeal.

The complaint alleges James S. Black & Company, Inc., possessed authority to commence this litigation on behalf of the successors in interest of Kuhn Realty Company, Inc., a dissolved corporation.[3] By pretrial motion, lessee moved to dismiss the action for want of the real parties in interest,

shall be entitled to have contributed to such repairs as final payments therefor such amounts as are received from the policies of fire insurance on the building, and shall also continue to pay the rent without deduction because of the time the premises were untenantable by reason of such fire. In case of fire or accident at the premises, the Tenant shall give the Landlord immediate notice of the same."

[3]Namely: Francelle W. Metzenberg, Rena K. Weil and First National Bank of Chicago, Trustees under the will of Aaron Kuhn, Karl L. Metzenberg, Nancy A. Pfaelzer, Jill Pfaelzer Stern, Urban S. Hirsch, III, Karen Hirsch, Rita Hirsch, Vanna Metzenberg Lautman, Dicky W. Pfaelzer, Addis E. Hull, III, et al., Trustees under agreement dated August 8, 1969, for the benefit of Rena K. Weil, and Melvin A. Pfaelzer, Trustee under Trust Agreement dated March 26, 1971.

*i.e.*, the above-listed entities and individuals as successors in interest of Kuhn Realty. Lessor's counsel moved to join as real parties in interest both Kuhn Realty and its directors and stockholders as successors in interest, there being considerable question as to whether Kuhn Realty had ceased to exist by operation of law. The trial court denied lessee's motion to dismiss Black & Co., but granted lessee's motion to join additional parties plaintiff.

At the time of commencement of trial, lessee again challenged the authority of Black & Co. to continue as a real party in interest in this litigation. Subsequently, the testimony revealed that Black & Co., though possessing authority to negotiate a surrender of the lease in issue, was ostensibly without authority to commence this litigation. The trial court then granted the lessee's motion to dismiss Black & Co. Additionally, the trial court required the lessor's counsel to obtain written authorization from each of the named successors in interest evidencing counsel's authority to commence and proceed with this litigation. Belatedly, but before the case was submitted to the jury, counsel complied.

Lessee now claims that the trial court erred in failing to dismiss the action at the commencement of trial pursuant to the lessee's pretrial motion to dismiss for want of a real party in interest.

We find Black & Co. was properly dismissed as it was without authority to commence this litigation. We further find that the trial court properly refused to grant the lessee's motion to dismiss the action for want of a real party in interest. CR 17 provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; . . .

CR 21 provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the

court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

After dismissing Black & Co., the court realized there existed a cause of action either on behalf of the corporate entity or its successors in interest should it ultimately determine that the corporation had been dissolved by operation of law. Additionally, the court was cognizant of the provisions of CR 17 and therefore elected to join, as parties plaintiff in this action, Kuhn Realty and its directors and stockholders as successors in interest. The trial court properly refused to grant the lessee's motion to dismiss. CR 17 and CR 21.

Lessee next urges the trial court erred in permitting the joinder of Kuhn Realty as a corporate entity contending the corporation had ceased to exist by operation of law for failure to pay an annual license fee for a period of 3 consecutive years as required by RCW 23A.40.075.[4]

---

[4]RCW 23A.40.075:

"The annual license fee required by RCW 23A.40.060, as now or hereafter amended, and RCW 23A.40.140 is a tax on the privilege of doing business as a corporation in the state of Washington, but is not a tax on the privilege of existing as a corporation. No corporation shall do business in this state without first having paid its annual license fee, except as provided in RCW 23A.36.010 and 23A.36.020.

"Failure of the corporation to pay its annual license fees shall not derogate from the rights of its creditors, or prevent the corporation from being sued and from defending lawsuits, nor shall it release the corporation from any of the duties or liabilities of a corporation under law.

"Every domestic corporation which shall fail for three consecutive years to acquire an annual license for the privilege of doing business in this state shall cease to exist as a corporation on the third anniversary of the date it was last licensed to do business in this state or in the case of a corporation which has never been licensed, on the third anniversary of the date of filing its articles of incorporation. When a corporation has ceased to exist by operation of this section, remedies available to or against it shall survive in the manner provided in RCW 23A.28.250 and the directors of the corporation shall hold the title to the property of the corporation as trustees for the benefit of its creditors and shareholders.

"A domestic corporation which has not ceased to exist by operation

The record fails to evidence a period of 3 consecutive years in which Kuhn Realty was delinquent in the payment of its annual license fee.

On the contrary, the record contains a certificate of the Secretary of State stating that Kuhn Realty is a Washington corporation in good standing with all annual license fees paid to July 1, 1974[5]. Neither the authenticity nor the validity of the certificate is challenged. The lessee's contention that the corporation was dissolved by operation of law, even though alleged in lessor's complaint, is not supported by the record; we find no error. The addition of the lessor's directors and stockholders was not prejudicial to lessee.

■■ Lessee next claims the court erred in submitting

of law may restore its privilege to do business by paying the current annual license fee and a restoration fee which shall include a sum equivalent to the amount of annual license fees the corporation would have paid had it continuously maintained its privilege to do business plus an additional fee equivalent to one percent per month or fraction thereof computed upon each annual license fee from the time it would have been paid had the corporation maintained its privilege to do business to the date when the corporation restored its privilege to do business: *Provided*, That the minimum additional license fee due under this section shall be two dollars and fifty cents. Upon payment of the above fees, restoration shall be effective, and the corporation shall have all the rights and privileges it would have possessed had it continually maintained its privilege to do business.

"When any domestic corporation loses it privilege to do business for failure to pay its annual license fee when due, the secretary of state shall mail to the corporation at its registered office, by first class mail, a notice that the corporation no longer has the privilege of doing business in this state, and that the corporation's privilege may be restored as provided in this section, and a notice that, if the privilege is not restored for three consecutive years, the existence of the corporation shall cease without further notice."

[5]RCW 23A.44.060 provides:

"All certificates issued by the secretary of state in accordance with the provisions of this title, and all copies of documents filed in his office in accordance with the provisions of this title when certified by him, shall be taken and received in all courts, public offices, and official bodies as prima facie evidence of the facts therein stated. A certificate by the secretary of state under the great seal of this state, as to the existence or nonexistence of the facts relating to corporations shall be taken and received in all courts, public offices, and official bodies as prima facie evidence of the existence or nonexistence of the facts therein stated."

an instruction setting forth verbatim paragraphs 6 and 14 of the lease, contending that undue emphasis was thereby placed on the liabilities of the lessee. We disagree. When considered in light of all the instructions pertaining to the issues presented, we find no prejudicial error. Lessee cites no authority in support of this claim and on its face it does not appear to have merit. *State v. Waldenburg*, 9 Wn. App. 529, 535, 513 P.2d 577 (1973); *Estes v. Lloyd Hammerstad, Inc.*, 8 Wn. App. 22, 27, 503 P.2d 1149 (1972).

Lessee assigns error to several instructions relating to the court's failure to advise the jury: (a) that an exception for reasonable wear and tear is an implied exception as a matter of public policy; (b) that economic feasibility is a matter which can be considered under the terms of this lease to relieve the lessee of its obligation to make reasonable repairs, once the building becomes obsolete by the passage of time; (c) that an improper instruction on waiver of the lessor's right to maintenance of the upper floors was given; and (d) that the tenant is responsible only for the last 6 years of its omission, not the entire period of the lease pursuant to the applicable statute of limitations. We disagree with each of these contentions.

(a) and (b): This lease contained a specific clause, paragraph 6, stating the tenant would:

> keep the said premises, both inside and outside, including structural repairs, alterations or changes, in good order, condition and repair at its own expense, which repairs, alterations or changes shall be in quality and class equal to the original work, . . . and to comply within a reasonable time with all present and future laws and ordinances, regulations and orders and any and all violations filed, instituted and enforced by city, county, state and federal governments, and of each and every department, bureau and official thereof, and any other bodies having jurisdiction in the premises.

Unless expressly accepted by the language of the lease, the lessee is not relieved from liability resulting from reasonable wear and tear or obsolescence. *Anderson v. Ferguson,*

17 Wn.2d 262, 135 P.2d 302 (1943); *Arnold-Evans Co. v. Hardung*, 132 Wash. 426, 232 P. 290, 45 A.L.R. 9 (1925).

The lessee attempts to distinguish these cases principally because they contain a "redelivery clause" to the effect that the lessee agrees to keep the building in good repair and additionally *return the same* at the expiration of the lease in as good a condition as it was at the time of entry into the lease. Though there is no express redelivery clause contained in the lease in issue, the language of paragraph 6 requires that the lessee not only return the premises in as good a condition as that in which it was received at the commencement of the lease, but that such premises be maintained in compliance with all future laws and ordinances. That language gives rise to the possibility that the building would be returned in a condition superior to that in which it was received.

In construing the covenants contained within a lease, the court attempts to determine the intent of the parties at the time the lease was entered into, neither extending nor enlarging their obligations beyond the plain meaning of the language contained within the instrument. *Schorzman v. Kelly*, 71 Wn.2d 457, 429 P.2d 217 (1967); *Allied Stores Corp. v. North West Bank*, 2 Wn. App. 778, 469 P.2d 993 (1970). It is apparent the intention of these parties was to maintain the building in the condition in which the tenant found it in 1923, and further to comply with building codes and ordinances enacted during the term of the lease. It is not for this court to determine whether that was a wise agreement. The plain language of the lease indicates that this was the obligation contractually undertaken by the lessee. Since no exception for reasonable wear and tear, nor for obsolescence, economic or otherwise, is contained in the lease, none will be inferred regardless of the existence or nonexistence of a redelivery clause. We find no error.

(c): Whether the lessor had waived its right to maintenance of the upper four floors of the building by conditionally consenting to the demolition of such floors was a factual issue submitted to the jury for determination. The instruc-

tion given provided the lessee an adequate opportunity to argue its theory. The jury found no waiver; we find no error.

■ (d): The lessee contends the 6-year statute of limitations should have prevented the lessor from offering evidence and claiming damage for injuries to the premises occurring in the first 44 years of the lease. We disagree[6].

As noted in *Nelson v. Seattle*, 180 Wash. 1, 33, 38 P.2d 1034 (1934): "The general rule is that a covenant to make repairs is not breached until the expiration of the term. . . . 1 Taylor's Landlord and Tenant (9th ed.), § 361." A lessor whose lease contains a covenant to repair may bring an action as soon as the premises become out of repair, but the lessor is not required to do so; he may wait until after the expiration of the term of the lease. 1 H. Tiffany, *Landlord & Tenant* § 116(f) and (h) (1910); *cf. Yakima Valley Motors, Inc. v. Webb Tractor & Equip. Co.*, 14 Wn.2d 468, 128 P.2d 507 (1942); *Farrell Lines, Inc. v. New York*, 30 N.Y.2d 76, 330 N.Y.S.2d 358, 281 N.E.2d 162 (1972); Annot., 45 A.L.R. 12 (1926).

■ Lessee next contends that the court erred in failing to give the following proposed instruction:

If you determine that the defendant is liable to the plaintiff in this case, then the plaintiff's damages are to be arrived at as follows: If you find that the cost of complete restoration of the Kuhn Building is reasonable under the circumstances, then the cost of restoration is the measure of damages. If, on the other hand, you find that the cost of restoration of the Kuhn Building is not reasonable, then the proper measure is the diminution in the market value of the building attributable to any act or omission on the part of the defendant; that is to say, the difference in the value on today's market of a Kuhn Building repaired to its 1923 condition and the Kuhn Building in its current condition.

---

[6]No exception was taken to instruction No. 16: "You are instructed that under the lease plaintiff's claim for failure to keep in repair may be brought within six years after the time for surrender of the premises, December 31, 1973." Thus, it became the law of the case. *Tilton v. Cowles Publishing Co.*, 76 Wn.2d 707, 459 P.2d 8, *cert. denied*, 399 U.S. 927, 26 L. Ed. 2d 792, 90 S. Ct. 2238 (1969).

Both parties agree that the measure of damages is the cost of restoration of the building to its former condition unless the cost of restoration exceeds the diminution in value, *i.e.*, the difference in value on today's market had it been maintained as required by the lease and the value in its present condition.[7] *Kane v. Timm*, 11 Wn. App. 910, 527 P.2d 480 (1974); *Falcone v. Perry*, 68 Wn.2d 909, 416 P.2d 690 (1966). There was no evidence presented as to the amount of diminution in value attributable to the breach of the lease. The lessee introduced evidence of the reasonable square-foot rental value based upon maintenance of the building in good repair and the operational costs per square foot. They equaled each other; but this is not evidence of market value. There was also evidence of an offer to purchase the building in its present condition for $450,000 and testimony of the county assessor as to his appraisal value of the existing building and the land. This established its present market value; but there is no evidence establishing the market value of the building had it been maintained as required by the terms of the lease. The only evidence before the jury was the cost of restoration. There being no evidence of market value of the building had it been maintained pursuant to paragraph 6, the trial court properly refused to submit the lessee's proposed instruction No. 22. *Falcone v. Perry, supra; Burr v. Clark*, 30 Wn.2d 149, 190 P.2d 769 (1948); *Kane v. Timm, supra.*

The lessor's cross-appeal relates to the failure of the trial court to find that the lessee was guilty of waste, an issue which by stipulation had been withdrawn from the jury's consideration. Substantial evidence supports the determination of the court. *Dorsey v. Speelman*, 1 Wn. App. 85, 459 P.2d 416 (1969).

The final issue is whether the lessee should have paid an LID assessment in the sum of $20,782.62. Under the provisions of the lease, lessee was required to pay: "all . . .

---

[7]*But see Farrell Lines, Inc. v. New York, supra.* In addition to lessee's failure to keep the building in repair, some of the plumbing fixtures had been removed.

charges, assessments, and payments . . . of every kind and nature as shall . . . be assessed, levied or imposed . . ."

The Treasurer of the City of Spokane filed a preliminary assessment in the aforementioned amount on July 11, 1972, and an ordinance was adopted establishing the LID. An assessment was not levied against the property, however, until August of 1974; the lease expired December 31, 1973. Thus, on the expiration date of the lease, no assessment having been levied against the property, there was no lien for which the lessee was responsible. *Miller v. Tietz Constr. Co.*, 46 Wn.2d 180, 279 P.2d 641, 283 P.2d 677 (1955); RCW 35.50.010. *Alder v. R.W. Lotto, Inc.*, 10 Wn. App. 201, 517 P.2d 227 (1973), is distinguishable because this lease expired prior to the attachment of the lien.

Judgment is affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied March 4, 1976.

Review denied by Supreme Court May 25, 1976.