[No. 4219.  Decided April 17, 1902.]

EDWARD J. PARKINSON, *Appellant,* v. SEATTLE SCHOOL
DISTRICT No. 1 *et al., Respondents.*

SCHOOL DISTRICTS — ISSUANCE OF BONDS — NOTICE OF ELECTION —
SPECIFICATION OF INTEREST RATE.

The fact that notice of election for the purpose of authorizing
the issuance of bonds by a school district arbitrarily fixed the
rate of interest at four per cent., instead of leaving the rate open
to competition, would not invalidate the election; since under
Laws 1897, p. 401, § 117, the issuance of such bonds, bearing a
rate of interest not exceeding ten per cent. per annum, is author-
ized, and under Id., § 118, it is provided that notices of election to
determine the question of issuing bonds "shall state amount of
bonds proposed to be issued, time they are to run, and purpose for
which the money is to be used," but it is nowhere required that
the matter of interest shall be submitted to popular vote, and
hence the statement of rate of interest in the election notice was
an immaterial matter, not binding on the board, nor invalidating
the election.

SAME — SALE OF BONDS — CALL FOR BIDS — SUFFICIENCY.

Under Laws 1897, pp. 402, 403, §§ 119, 120, which provide that
the county treasurer, where an issue of bonds has been authorized
by popular vote of a school district, must make a call for bids
wherein he shall ask "bidders to name price and rates of interest
at which they will purchase such bonds;" and such bonds shall be
sold to the person making the most advantageous offer, the fail-
ure of the treasurer in his notice to require bidders to name a
rate of interest at which they would be willing to purchase the
bonds, would be, in the absence of bad faith or oppression, but a
mere irregularity not affecting the validity of the bonds, where
the bids were otherwise within the statutory limitations, and the
one accepted was for the face of the bonds, with a premium which,
in effect, decreased the interest rate named by the school district.
(DUNBAR, J., dissents.)

Appeal from Superior Court, King County.—Hon.
BOYD J. TALLMAN, Judge.  Affirmed.

*James Kiefer,* for appellant.

*Walter S. Fulton,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—Seattle School District No. 1, King county, Washington, by proper resolution, submitted to the qualified electors of that district a proposition of issuing and selling $275,000 of twenty-year four per cent. bonds for the purpose of purchasing sites and erecting necessary buildings for the use of the school district. An election was regularly and properly called for the 30th day of November, 1901, on which day more than three-fifths of the electors voting at such election voted in favor of the issue and sale of the bonds named. In pursuance of the authority thus given, the board of directors of said district passed a resolution as follows:

"Be it resolved that the proposition of issuing bonds in the sum of $275,000, running for a period of twenty years and drawing interest at the rate of four per cent. per annum, payable semi-annually, has been duly and legally carried and authorized by more than three-fifths of all the votes cast at a special election held for that purpose in this district on Saturday, the 30th day of November, A. D. 1901.

"Therefore the secretary is instructed to notify the treasurer of King county, Washington, to advertise the sale of said bonds in the Post-Intelligencer and Times of the city of Seattle. Bonds to be for $1,000, each to run for twenty years, with no option for redemption, to be dated March 1, 1902. Bids must be accompanied by a certified check for $5,000, and must specify a flat price for bonds, plus accrued interest. Bonds will be delivered by the board as follows: $100,000 March 1st, 1902; $100,000 June 1st, 1902, and $75,000 September 1st, 1902. Bonds and interest payable in Seattle or at the state's fiscal agency in New York City. Bids will be received up till 2 o'clock P. M. Friday, January 10, 1902. The above resolution was adopted by unanimous vote."

Upon proper request the county treasurer of King county issued and published a notice calling for bids for the purchase of the bonds as follows:

"Notice is hereby given that pursuant to a special bond election held by school district No. 1 of King county, state of Washington, in the city of Seattle, on the 30th day of November, 1901, at which election more than three-fifths of the votes cast were 'for bonds "Yes,"' said school district No. 1 hereby offers for sale coupon bonds of said school district to the amount of $275,000, to be of the denomination of $1,000 each, bearing interest at the rate of four per cent. per annum, and to be payable twenty years after date at the office of the treasurer of King county, state of Washington, or at the office of the fiscal agency of the state of Washington in the city of New York, in the state of New York, at the option of the purchaser. The interest to be payable semi-annually, and evidenced by coupons payable at the said treasurer's office, or at the said fiscal agency, at the option of the purchaser. Sealed bids for the purchase of said bonds will be received by the county treasurer of King county, state of Washington, up to 2 o'clock P. M. on Friday, January 10, 1902, at the office of said county treasurer in the city of Seattle, state of Washington, at which time said bids will be considered as required by law. Bidders must specify flat price for bonds plus accrued interest from March 1st, 1902. Said bonds will be dated March 1, 1902, and will be delivered as follows: $100,000 on March 1, 1902; $100,000 on June 1, 1902, and $75,000 on September 1, 1902. Said bonds will not be sold below par. All bidders for said bonds, excepting the state of Washington, are required to deposit with the said county treasurer a certified check for $5,000, made payable to said county treasurer, when depositing with said treasurer their bids. No commissions will be allowed on the sale of said bonds. The directors reserve the right to reject any and all bids. The purpose of this bond issue is for the purchase of school sites and erection of school buildings."

In response to this notice two bids were received. The one accepted was as follows:

"CHICAGO, January 6, 1902.
J. W. McConnaughey, Esq.,
    County Treasurer, Seattle, Wash.

Dear Sir:—We will purchase the $275,000 twenty years straight 4 per cent. semi-annual interest bonds of School District No. 1 of King county, Washington, dated March 1, 1902, interest and principal payable at the Fiscal Agency of the State of Washington in the city of New York and delivered in the amounts and at the times stated in your official advertisement, and will pay for the said bonds the sum of $275,000 and accrued interest from the date of said bonds to the date or dates of the several deliveries thereof, and a premium of $6,225. It is understood that prior to the delivery of the bonds you will furnish us such certified papers as we may require to evidence satisfactorily to our attorney that the bonds as issued are a legal and valid indebtedness of the said school district. We inclose herewith our check by the First National Bank of Chicago in the sum of $5,000 in compliance with your advertisement, as an evidence of good faith.

Respectfully submitted,
        THOMPSON, TENNY & CRAWFORD CO.,
            By H. C. BARROLL, Manager."

This action was brought by appellant, who is a resident, property owner, and taxpayer of the district, to enjoin the issuance of the bonds. The complaint alleged the facts substantially as above set out. Respondents demurred to the complaint upon the ground that the same does not state facts sufficient to constitute a cause of action. This demurrer was sustained by the lower court, plaintiff elected to stand upon his complaint, and a judgment of dismissal was entered. From this judgment plaintiff appeals.

Appellant argues that the bonds are illegal, unauthorized, and void for two reasons, viz: (1) that in the notice of election and in the formal proposition submitted to the

voters upon these bonds the rate of interest is fixed at four per cent.; (2) that the notice, as published, fixed a flat rate of interest, instead of requesting a tender of such rate of interest as the bidder or bidders would be willing to accept.

1. It is contended by appellant that the election at which the bonds were authorized was invalid, because the notice thereof arbitrarily fixed the rate of interest at four per cent., instead of leaving the rate of interest open to competition. Sections 117 and 118 of the Code of Public Instruction (Laws 1897, p. 401) are as follows:

"Sec. 117. The board of directors of any school district in this state may borrow money and issue negotiable coupon bonds therefor to an amount not to exceed five (5) per cent. of the taxable property in such district, as shown by the last assessment roll for county and state purposes: *Provided,* That in incorporated cities the assessment shall be taken from the last assessment for city purposes, for the purpose of funding outstanding indebtedness, or bonds heretofore issued or issued under the provisions of this act, or for the purchase of school house site or sites, building one or more school houses and providing the same with all necessary furniture and apparatus, or for any or all of these purposes, when authorized by vote of the district so to do, as provided in section 118 of this act: *Provided further,* That the bonds so issued shall bear a rate of interest not to exceed ten (10) per cent. per annum, interest payable annually or semi-annually, payable and redeemable at such time as may be designated in the bonds, but not to exceed twenty (20) years from the date of issue.

"Sec. 118. The question whether bonds shall be issued, as provided in section 117 of this act, shall be determined at an election to be held in the manner prescribed by law for holding special school elections. Notices therefor shall state amount of bonds proposed to be issued, time they are to run, and purpose for which the money is to be used. The ballots must contain the words, 'Bonds, yes,' or

'Bonds, no.' If a majority of the votes cast at such election are 'Bonds, yes,' the board of directors must issue such bonds: *Provided,* That if the amount of bonds to be issued, together with any outstanding indebtedness of the district, not to be redeemed with the proceeds of said issue of bonds, exceeds one and one-half per cent. of the taxable property in said district, then three-fifths of the votes cast at such election must be 'Bonds, yes,' before the board of directors are authorized to issue said bonds. The bond shall be in such form as the board of directors may prescribe, and shall, with the coupons, be signed by the board of directors and countersigned by the clerk of the school district."

It will be noticed that the power of the boards of directors of school districts to borrow money and issue bonds thereof is fixed by these sections, and that the maximum interest rate shall not exceed ten per cent. This interest rate is not controlled by the electors. The question whether bonds shall be issued within the limitation fixed is the one which is determined by the electors, and this question is determined at a special election called for that purpose. "Notices therefor shall state the amount of bonds proposed to be issued, time they are to run, and purpose for which the money is to be used." The notice in this case is not deficient in these particulars, but it goes further than it is required to go, and states that the bonds shall draw interest at the rate of four per cent., payable semi-annually. This rate is within the limitation of interest fixed by law, and within the rate at which the board is authorized by law to sell the bonds upon an election authorizing the sale thereof. The board of directors was not required to submit to the voters the question of the rate of interest which the bonds should bear, but was authorized to determine that question for itself. The law does not permit the board to delegate to popular vote the determination of matters not expressly conferred or enjoined by law. *Yesler v. Se-*

*attle*, 1 Wash. 308 (25 Pac. 1014). Consequently the board was not bound by the rate of interest named in the notice, nor was the notice on that account rendered void.

Counsel for appellant argues that it plainly appears to have been the intention of the legislature that the matter of bond sales should be so handled as to sell the bonds at the highest possible price and at the lowest possible rate of interest. Conceding this to be true, it does not follow that the notice stating the rate of interest within the ten per cent. limitation would be void. If the notice had read "said bonds shall draw interest at not to exceed ten per cent., payable semi-annually," it could not be reasonably contended that the clause would avoid the notice, for, without any limitation of interest being named in the notice, that clause must be read into it under the statute. So, also, the rate being fixed at four per cent. is but an expression of the maximum rate of interest at which the board proposed to sell the bonds, and does not prohibit competition upon the rate. The bonds may be sold at or above par, and at or below four per cent. interest, payable semi-annually. No adverse authorities are called to our attention upon the question now under consideration, and we are constrained, for the reasons above stated, to hold that the notice was sufficient, and that the election was therefore valid.

2. It is next argued that the notice for bids published by the county treasurer was insufficient, because it failed to require bidders to name a rate of interest at which they were willing to purchase the bonds. Sections 119 and 120 (Laws 1897, pp. 402, 403) are as follows:

"Sec. 119. When authorized and empowered to issue bonds as provided in sections 117 and 118 of this act, the board of directors shall, within thirty days after the date of the election, certify the result to the county treasurer,

who shall immediately publish notice of the sale of such bonds in at least one weekly newspaper published at the county seat, if there be one, for four consecutive issues, and publish such other notices as the board of directors may require. Said notices must give the amounts of bonds to be sold, the time to run, where payable, the option, if any, of the district to redeem; also naming the hour and day for considering bids, and asking bidders to name price and rates of interest at which they will purchase such bonds. Such bonds shall be issued in denominations of not less than one hundred nor more than one thousand dollars ($1,000), and shall contain upon their face the date of issue, the series of issue, rate of interest, where payable, time to run, option, if any, of districts to redeem, and the printed or lithographed statement that said bond is issued under the provisions of this act, and that the whole indebtedness of said district does not exceed the constitutional limit. Each bond so issued must be registered by the county treasurer in a book to be kept for that purpose, which must show the number, and such data as is necessary to secure a complete record of such bond, series, and amount of each bond, the person to whom the same is issued, name of the district issuing, together with the names of directors signing the same; and the said bond shall be endorsed by the treasurer, with his name and a full statement of the name of the person to whom and when issued, together with the number and series of said bond.

"Sec. 120.   At the time named in said notice it shall be the duty of the said board of directors to meet with the county treasurer at his office, and with him open said bids and sell such bonds to the person or persons making the most advantageous offer: *Provided,* The bonds shall never be sold below par, and the board of directors may reject any and all bids, and within six months proceed to readvertise the sale of such bonds. Upon the sale of bonds the board of directors shall, within ten (10) days, or as soon thereafter as practicable, deliver the bonds, properly executed, to the county treasurer, taking his receipt therefor. The county treasurer shall, upon payment of the price agreed upon, deliver the same to the person or persons to

whom sold, and place the moneys arising from such sale to the credit of the special school fund of the said district. Fees for advertising shall be deducted from the proceeds."

It is conceded that the notice to bidders contained all the statute required except that it did not in express terms ask bidders to name the rate of interest at which they were willing to purchase the bonds. This rate was named in the notice. It is also conceded that there was no bad faith or oppression exercised by any one connected with the sale of the bonds, and that the board of directors were acting for what they conceived to be the best interests of the district; but it is argued that the board of directors has no legal right or authority to enter into a contract which is not a direct result of competitive bidding or an opportunity for such bidding, both as to price to be paid and the rate of interest; and that when the notice to bidders eliminated the request to name the rate of interest, to that extent it prevented competition, and thereby took away from the taxpayer the benefit of such competition. This argument is fully met by the facts in the case: The power to issue the bonds was complete when the election was held, and the authority to do so given by the required vote. The effect of the provisions of the statute under consideration was to secure the sale of the bonds at the most advantageous terms for the school district, and to that end certain limitations were imposed, viz: They could not be sold for less than the par value; the interest rate could not be greater than ten per cent., payable annually or semi-annually; the time they were to run could not exceed twenty years from the date of issue. Within these limitations the board of directors was authorized to sell the bonds to the persons making the most advantageous offer. It is no doubt correct that the board would have no legal right to *sell* the bonds except under competitive bidding, or an op-

portunity therefor, and this was the *essential requirement*.
The statute does not require that the rate of interest shall
be named in the notice to bidders, and did not contemplate
that it would be named therein, and hence directed that the
bidders be asked to name price and rate of interest. When
no rate is named in the notice, a bid which does not name
the rate at which the purchaser is willing to take the bonds
would be indefinite and uncertain. To avoid this un-
certainty, this direction was inserted. As stated above, the
essential requirement is competition. This competition
must, of necessity, be upon the price and rate of interest,
and these two elements are so closely related and interde-
pendent in sales of this character that a bid upon one where
the other is fixed must necessarily be a bid upon both; for
when the rate of interest is fixed, and a bid is asked for the
price at which the purchaser is willing to purchase, or
when the price is fixed and the purchaser is asked to name
the interest rate at which he is willing to purchase, the
result in either case must be the same as where the pur-
chaser is asked to bid upon both price and rate of interest
where neither is fixed, because the price paid for the bond
fixes the rate which is actually paid for the use of the
money. So that a bid upon either price or rate, where the
other is fixed, is a bid upon both, for the rate governs the
price, and *vice versa*. The essential provision is compe-
tition upon the price and rate. This essential is accom-
plished where either is fixed within the statutory limita-
tion, and a bid asked upon the other.

No unfairness or oppression is charged in the complaint.
The bids were within the statutory limitation, and the one
accepted was for the face value of the bonds with a pre-
mium of $6,225, which was, in effect, to decrease the inter-
est rate named. The object of the law was accomplished.

The mere fact that no bid was asked as to the interest rate must be held, under these circumstances, to amount at most to a mere irregularity. As was said in *Derby v. Modesto,* 104 Cal. 515 (38 Pac. 900):

"Those directions which are not of the essence of the thing to be done, and by the failure to obey which the rights of those interested will not be prejudiced, are not to be regarded as mandatory. . . . The change did not affect the validity of the bonds, and as no greater burden is imposed upon the taxpayers the appellant cannot complain."

It was not error to sustain the demurrer. The cause is therefore affirmed.

REAVIS, C. J., and WHITE, HADLEY, FULLERTON and ANDERS, JJ., concur.

DUNBAR, J.—I dissent. It may be, and probably is, true that in this instance the bonds brought as much as if the law had been complied with; but the requisites of the notice are prescribed by the legislature, and it is not for the officers to say that some other method is just as good as the method fixed by law. Presumably, the legislature counseled and deliberated on the best method, and, when that method is determined by the law making power, it ought to be followed.