[No. 64779-8. En Banc.]

Argued September 17, 1997. Decided April 9, 1998.

GRANITE FALLS LIBRARY CAPITAL FACILITY AREA,
*Respondent*, v. THE TAXPAYERS OF GRANITE FALLS LIBRARY
CAPITAL FACILITY AREA, *Appellants*.

*Anderson, Hunter, Dewell, Baker & Collins,* by *G. Douglas Ferguson* and *Joni Larson,* for appellants.

*Daniel S. Gottlieb;* and *Graham & James, L.L.P./Riddell Williams, P.S.,* by *Paul J. Kundtz* and *Elizabeth R. Kennar,* for respondent.

SMITH, J. — Appellants The Taxpayers of Granite Falls Library Capital Facility Area seek review of a decision of the Snohomish County Superior Court which granted summary judgment in favor of Respondent Granite Falls Library Capital Facility Area, a Washington quasi-municipal corporation, ruling (a) that the Library Capital Facility Act, RCW Chapter 27.15, was constitutional; (b) that Respondent has the legal right and authority to sell and issue

unlimited tax obligation bonds and that such bonds are valid; (c) that Respondent is a separate municipal corporation and independent taxing authority with authority to levy taxes within the meaning of Article VII, Section 1 and Article VII, Section 2 of the Washington Constitution; and (d) that the Act satisfies the constitutional guaranties of equal protection, due process and right of suffrage. We granted review. We affirm the Superior Court.

## QUESTIONS PRESENTED

The questions presented in this case are: (1) whether the Library Capital Facility Area Act, RCW 27.15 (the Act), authorizing creation of the Granite Falls Library Capital Facility Area (Library Facility Area) as a separate quasi-municipal corporation with taxing authority results in uniform taxes required by Article VII, Section 1 and Article VII Section 9 of the Washington Constitution; (2) whether the Act, as required by Article XI, Section 12 of the Washington Constitution, properly delegates the taxing authority; (3) whether the Act and creation of the Granite Falls Library Capital Facility Area satisfy the constitutional guaranties of equal protection and due process under the fourteenth Amendment of the United States Constitution and the right of suffrage under Article I, Section 19 of the Washington Constitution; and (4) whether Appellant's designated representatives are entitled to attorney fees on appeal.

## STATEMENT OF FACTS

This case comes before the Court on stipulated facts.[1] The parties stipulated the Act was passed by the Washington Legislature in 1995. The statute permits establishment of "library capital facility areas" defined as quasi-municipal corporations and independent taxing districts within the meaning of Article VII, Section 1 of the Washington Consti-

[1]Stipulated Facts, Snohomish County Superior Court Cause No. 96-2-04972-5, 1-6 and App. A, Exs. 1-13.

tution, and independent taxing authorities within the meaning of Article VII, Section 2 of the Washington Constitution.

On August 23, 1995, the City Council of Granite Falls (City Council) approved submission of a joint request with the Sno-Isle Intercounty Rural Library District to the Snohomish County Council (County Council) to establish the Granite Falls Library Capital Facility Area. The request provided for issuance of general obligation bonds and imposition of an excess levy to finance acquisition and construction of the library facility.[2] The City Council approved it for placement on the ballot. The trustees of the Sno-Isle Intercounty Rural Library District on August 28, 1995 approved the proposition.[3]

On September 1, 1995, the Sno-Isle Intercounty Rural Library District resolution, the City Council resolution and the Joint Request and Operating Agreement[4] were submitted to the Snohomish County Council. As required by the Act (RCW 27.15), the request included resolutions and a description of the boundaries of the Library Facility Area, which were coterminous with the boundaries of Granite Falls School District Number 332.

On September 20, 1995, the County Council called for a special election for the two propositions within the Library Facility Area to be held with the general election on November 7, 1995.[5] Formation of the Library Facility Area was approved by a majority of votes cast at that election. At least 40 per cent of the votes cast in the last preceding general election were cast on November 7, 1995 with at

[2]Resolution 95-4 of the City of Granite Falls, Wash. (Aug. 23, 1995), Stipulated Facts, App. A, Ex. 1.

[3]Resolution 95-5 of the Bd. of Trustees of the Sno-Isle Intercounty Rural Library Dist. (Aug. 28, 1995), Stipulated Facts, App. A, Ex. 2.

[4]Joint Request & Operating Agreement (between the Sno-Isle Intercounty Rural Library Dist. & the City of Granite Falls, Aug. 28, 1995), Stipulated Facts, App. A, Ex. 3.

[5]Mot. 95-340 of Snohomish County Council (Sept. 20, 1995), Stipulated Facts, App. A, Ex. 4.

least three-fifths of those votes approving the proposition. The voters authorized the Library Facility Area to issue up to $1.6 million in general obligation bonds maturing within 20 years for the acquisition and construction of a library capital facility, and approved the levy of annual excess property taxes necessary to pay and retire the bonds.[6]

The Snohomish County Council then appointed the "Governing Body" of the Library Facility Area.[7] The Governing Body adopted its bylaws[8] and a resolution authorizing the sale and issuance of unlimited tax obligation bonds in the aggregate principal amount of $1.6 million, as authorized by the statute and approved by the voters of the Library Facility Area.[9] The Governing Body entered into an Interlocal Agreement with the Sno-Isle Library System and the City of Granite Falls to govern the ownership, management and operation of the library capital facility financed by the Library Facility Area in accord with the statute.[10]

The total assessed value of all taxable property within the Library Facility Area in 1995 was $360,811,319. Bonds issued in the full amount of $1.6 million would not subject the Library Facility Area to obligation on indebtedness in excess of an amount equal to one and one-quarter percent

[6]Official Canvass of Special Election for the Granite Falls Area—Acquisition/Construction Bonds $1,600,000, Snohomish County, Wash. held on Nov. 7, 1995, Stipulated Facts, App. A, Ex. 5; Official Canvass of Special Election for the Granite Falls Area—Proposed Library Capital Facility Area Snohomish County, Wash., held Nov. 7, 1995, Stipulated Facts, App. A, Ex. 6. The Granite Falls Library Capital Facility Area as of the general election on November 7, 1997 had 4,429 registered voters.

[7]Mot. 96-029 of Snohomish County Council (Jan. 24, 1996), Stipulated Facts, App. A, Ex. 7.

[8]Bylaws of Granite Falls Library Capital Facility Area (adopted June 13, 1996), Stipulated Facts, App. A, Ex. 8.

[9]Resolution 96-2 of the Governing Body of the Granite Falls Library Capital Facilities Area (June 24, 1996), Stipulated Facts, App. A, Ex. 9.

[10]Interlocal Agreement (between City of Granite Falls, Sno-Isle Intercounty Rural Library District and Granite Falls Library Capital Facility Area, June 24, 1996), Stipulated Facts, App. A, Ex. 13.

of the value of the taxable property within the Library Facility Area.

The parties also stipulated that the Act imposed the following obligations upon the Library Facility Area in the future: the governing body of the Library Facility Area must determine whether the bonds will be issued in one or more series; must establish one or more maturity dates for the bonds; and must establish the interest rate or rates to be paid on the bonds. The bonds would be issued in the name of the Library Facility Area and would constitute general obligations of the Library Facility Area, which is solely liable for the bonds.

After issuance of the bonds, the governing body would levy excess property taxes on a yearly basis upon all the taxable property in the Library Facility Area at a rate sufficient to pay the principal and interest on the bonds. The rate is substantially dependent upon, and would vary directly with, the rate of interest the governing body establishes to be paid on the bonded indebtedness. The rate of tax would be uniform on the same class of property located within the geographical boundaries of the Library Facility Area.

The Library Facility Area is situated mostly within Snohomish County Council District Number 1, with several parcels within Snohomish County Council District Number 5. Snohomish County Council District Numbers 2, 3 and 4 have no property within the Library Facility Area. Snohomish County is organized and operated under the Home Rule Charter[11] as permitted by the Washington Constitution and the laws of the State of Washington. Section 2.30 of the Charter states:

> The county council shall consist of five members nominated and elected from districts. Councilmembers shall be residents and registered voters of the district they represent at the time of filing for election to said office and at all times during their terms. Any change in the boundaries of a councilmember's

[11]Snohomish County Charter (Preamble, Art. 1, and §§ 2.10 through 2.110 of Art. 2), Stipulated Facts, App. A, Ex. 10.

district which shall cause [the councilmember] to be no longer a resident shall not disqualify [the councilmember] from holding office during the remainder of the term for which [the councilmember] was elected or appointed.[12]

Only registered voters in a particular council district are permitted to vote for candidates nominated from such district and those registered voters are not permitted to vote for county council candidates from other districts.[13] The case was presented to the Snohomish County Superior Court on cross-motions for summary judgment. On November 1, 1996, the Honorable Gerald L. Knight granted summary judgment in favor of Granite Falls Library Capital Facility Area and denied Appellant's motion.[14] On November 2, 1996, Appellants, The Taxpayers of Granite Falls Library Capital Facility Area, filed a motion with this Court seeking direct review[15] which we granted on April 2, 1997.[16]

## DISCUSSION

## STANDARD OF REVIEW

This case was resolved on cross-motions for summary judgment in the Snohomish County Superior Court. This Court reviews a summary judgment de novo, treating all facts and inferences in a light most favorable to the non-moving party.[17]

 "A party challenging the constitutionality of a

---

[12]*Id.* at Art. 2, Section 2.30.

[13]*See* Stipulated Facts, *id.*

[14]Order Granting Summ. J., Snohomish County Superior Court Cause No. 96-2-04972-5, Clerk's Papers at 5-7.

[15]Statement of Grounds for Direct Review.

[16]Washington Supreme Court Order, No. 64779-8 (Apr. 2, 1997).

[17]*Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 625, 911 P.2d 1319 (1996) (citing *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994)).

legislative enactment bears the burden of proving, beyond a reasonable doubt, that the enactment is unconstitutional."[18] Statutory construction requires the Act be construed to give effect to the Legislature's intent, wherever possible.[19] In this case the constitutionality of the Act, chapter 27.15 RCW, is being challenged.

*UNIFORMITY OF TAXES*

Under the stipulated facts submitted to this Court, the parties agreed the taxes within the geographical boundaries of the Library Facility Area would be uniform. The dispute is on the question whether the tax will be imposed by the Library Facility Area or by the County Council. Appellants, The Taxpayers of the Granite Falls Library Capital Facility Area, contend the Act does not create or empower a sufficiently separate and independent taxing authority which is constitutionally distinct from Snohomish County, thus violating Article VII, Section 1, as amended by Amendment 81, and Article VII, Section 9, of the Washington Constitution.

Appellants claim the County Council is the true taxing authority and any taxes imposed on the Library Facility Area violates the constitution because it would not be imposed uniformly throughout Snohomish County. Appellants reason that the Act in effect vests the taxing authority in the county because the Library Facility Area's three-member appointed governing body is required by statute to be made up of county council members.

Article VII, Section 1 of the Washington Constitution states in part:

> **Taxation.** The power of taxation shall never be suspended, surrendered or contracted away. *All taxes shall be uniform*

---

[18]*Citizens for More Important Things v. King County*, 131 Wn.2d 411, 415, 932 P.2d 135 (1997) (citing *Erickson & Assocs. v. McLerran*, 123 Wn.2d 864, 869, 872 P.2d 1090 (1994)).

[19]*King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985) (citing *Janovich v. Herron*, 91 Wn.2d 767, 771, 592 P.2d 1096 (1979)).

*upon the same class of property within the territorial limits of the authority levying the tax* and shall be levied and collected for public purposes only.

(Emphasis added.)

Article VII, Section 9 of the Washington Constitution states:

**Special assessments or taxation for local improvements.** The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, *all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.*

(Emphasis added.)

Citing *Pierce County v. Taxpayers of Lakes Dist. Rec. Serv. Area,* Appellants state that the Library Facility Area, to be a true taxing authority, must be a constitutionally separate and independent taxing authority.[20] They argue that determination of a constitutionally sufficiently separate and independent taxing authority depends upon whether the entity has sufficient lawfully delegated powers as a governmental authority to independently carry out all essential functions without reliance upon other governmental entities.

Appellants concede that because municipal corporations are created by the Legislature, they have only such powers as are expressly granted to them and those necessarily implied to enable the corporation to carry out the powers expressly granted.[21] They claim powers not delegated are

[20]70 Wn.2d 375, 423 P.2d 67 (1967). *See also Roth v. Drainage Improvement Dist. No. 5,* 64 Wn.2d 586, 392 P.2d 1012 (1964); *Linn v. Walla Walla County,* 99 Wash. 224, 169 P. 323 (1917).

[21]*Pacific First Fed. Savs. & Loan Ass'n v. Pierce County,* 27 Wn.2d 347, 353, 178 P.2d 351 (1947). *See also Noe v. Edmonds Sch. Dist. No. 15,* 83 Wn.2d 97, 103, 515 P.2d 977 (1973) (quasi-municipal corporation may exercise powers which are "necessary or fairly implied in, or incident to, powers expressly granted").

considered to have been consciously denied.[22]

While the Act expressly authorizes the Library Facility Area to construct, acquire, maintain, and remodel facilities; authorizes it to finance through issuance of bonds; grants it the power to accept gifts or grants of money; and authorizes ultimate dissolution of the library capital facility area,[23] it does not authorize the Library Facility Area to acquire property through eminent domain, to hire employees,[24] or to sue or be sued.[25]

■ ■ In determining whether the entity is sufficiently independent to levy taxes, this Court must examine the legislative enactment authorizing its establishment.[26] In *Pierce County v. Taxpayers of Lake Dist. Rec. Serv. Area* the court suggested that a quasi-municipal corporation or taxing district, created by legislative enactment which establishes a "clearly defined separate municipal corporation," constitutes a separate and distinct entity.[27] However, this Court has not previously stated what is required to be a "clearly defined separate municipal corporation." In *Linn* this Court referred to legislative intent as only one factor in making the ultimate determination of which entity had the power.[28] When making its determination of the true taxing authority, the Court has looked at the specific powers delegated.

Respondent argues the Act created the Library Facility Area as a clearly defined separate quasi-municipal corporation. It rests its argument on the plain language of the

[22]27 Wn.2d at 353.

[23]RCW 27.15.040, .050, .060.

[24]*See Christie v. Port of Olympia*, 27 Wn.2d 534, 179 P.2d 294 (1947) (although the statute was silent, the port district had implied power to hire employees).

[25]*See* 64 Wn.2d at 586 (drainage improvement district which was not a quasi-municipal corporation lacked capacity to be sued, county was proper party).

[26]64 Wn.2d at 588.

[27]70 Wn.2d at 382.

[28]99 Wash. at 226 ("The county is the only political entity or public or municipal corporation to whom was granted the powers to be exercised for such a local drainage system.").

statute. RCW 27.15.010(2) states the " 'Library capital facility area' means a quasi-municipal corporation and independent taxing authority" under the Washington Constitution. Respondent states this express authorization by the statute distinguishes this case from those relied upon by Appellants where the entities were not designated as quasi-municipal corporations nor independent taxing authorities.[29]

Under the plain language of the statute indicating the legislative intent that the Library Facility Area constitutes an independent taxing authority, and the express and implied powers granted a quasi-municipal corporation, we conclude the Library Facility Area is such an independent taxing authority. The parties are in agreement that the taxes within the geographical boundaries would be uniform.

*SUFFICIENTLY SEPARATE AND INDEPENDENT*

Appellants argue the Act actually delegates the authority to Snohomish County to impose taxes for the Library Facility Area, a quasi-municipal corporation, in violation of Article XI, Section 12 of the Washington Constitution. This argument is based upon an assertion that the appointed three-member governing body of the Library Facility Area actually consists of county councilmembers functioning only in their capacity as councilmembers.

 Article XI, Section 12 of the Washington Constitution states:

**Assessment and collection of taxes in municipalities.** The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other

---

[29]*See Linn* at 225 ("Nowhere in the act is such drainage district as thereby created declared a municipal or public corporation, or given the power to sue or be sued, or given corporate succession.") *See also Roth*, 64 Wn.2d at 590 ("a drainage improvement district organized pursuant to this statute is under the ultimate control of the county; that it is not municipal corporation or a quasi-municipal corporation"); *Pierce County*, 70 Wn.2d at 382 (the recreation service area was not vested with any independent authority).

municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes.

Under this constitutional provision the Legislature may not grant a county authority to impose taxes upon another municipal corporation. However, a municipal corporation may be authorized to impose taxes on the property or inhabitants of its own municipal district. This Court has interpreted Article XI, Section 12 as limiting imposition of taxes by the Legislature, but permitting imposition of taxes by a municipal corporation through its corporate authorities.[30]

In *Municipality of Metro. Seattle v. City of Seattle* this Court stated that when the electorate votes to establish a regional municipal corporation, it accepts imposition of taxes as necessary to carry out the purposes of the act creating the municipal corporation.[31] The Court held that a statute authorizing creation of a metropolitan municipal corporation to establish a sewage disposal service did not violate Article XI, Section 12 because the corporation, and not the Legislature, was authorized to impose taxes.[32]

Respondent asserts the express legislative intent under the Act is to authorize creation of the Library Facility Area as an independent taxing authority and a separate quasi-municipal corporation as stated by the Legislature itself in its "Findings" which reads:

The legislature finds that it is in the interests of the people of the state of Washington to be able to establish library capital

---

[30]*Northern Pac. Ry. Co. v. Pierce County*, 51 Wash. 12, 97 P. 1099 (1908).

[31]*Municipality of Metro. Seattle v. City of Seattle*, 57 Wn.2d 446, 453, 357 P.2d 863 (1960) (citing *Northern Pac. Ry. Co.*, 51 Wash. at 17 ("the burden of paying the expenses necessary to effectuate the object of the organization was voluntarily assumed by a vote of the people")).

[32]*Id.* (citing *State ex rel. City of Seattle v. Carson*, 6 Wash. 250, 33 P. 428 (1893)) ("So long . . . as the tax is imposed by the corporate authorities, the evil sought to be avoided by the constitutional provisions is not incurred. In this case the burden being self-imposed, there is no room to exclaim against legislative power.").

facility areas as quasi-municipal corporations and independent taxing units existing within the boundaries of existing rural county library districts, rural intercounty library districts, rural partial-county library districts, or island library districts, for the purpose of financing the construction of capital library facilities.[33]

While Appellants concede this is the legislative intent, they nevertheless argue the Court must look beyond the expressed legislative intent.

Respondent does not dispute that, under the Act, the Library Facility Area is granted the express and implied powers necessary to exercise full and exclusive jurisdiction and control over its own affairs. Under the Act, the function of the County Council is restricted. The Act requires only the County Council to submit the proposition to the people after it has received written request from the Library Facility Area or the city and to appoint the three county councilmembers to form the governing body. The County Council is not vested with any other power under the Act.

The Library Facility Area has the powers expressly granted by the Act. In addition, this Court has stated a quasi-municipal corporation has the powers conferred upon it by the Constitution, the legislature and its own charter.[34] It also has the implied powers necessary to exercise its express powers and achieve its statutorily defined objectives.[35]

Respondent cites *Rena-Ware Distribs., Inc. v. Washington* in which this Court found that, absent evidence that a fraud has been committed upon a third person, common identity among officers and directors of two corporations does not justify disregarding the separate corporate identi-

---

[33]RCW 27.15.005.

[34]*City of Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 686, 743 P.2d 793 (1987) (citing 2 EUGENE McQUILLIN, MUNICIPAL CORPORATIONS § 10.09 (3d rev. ed. 1979)).

[35]*Id.*

ties.[36] Respondent asserts that councilmembers appointed to the governing board are still free to exercise their independent judgment.

Appellants have not established that members of the County Council would in fact be acting solely in their capacity as county councilmembers when they are appointed to the governing board of the Library Facility Area. They cite no evidence or case law to support their position that mere appointment of the governing body from members of the County Council places control of Library Facility Area decisions in the County Council.

### REPRESENTATION

 Appellants argue the Act permits taxation without representation and denies them their right of suffrage in violation of Article I, Section 19 of the Washington Constitution and in violation of the due process[37] and equal protection clauses of the Fourteenth Amendment of the United States Constitution. They argue the governing body is composed of members appointed by an independent non-representative body instead of being elected by the taxpayers, and taxpayers thus will be unable to exercise control over the governing body.[38]

Article I, Section 19 of the Washington Constitution states:

**Freedom of elections.** All Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

---

[36]*Rena-Ware Distribs., Inc. v. State*, 77 Wn.2d 514, 517-18, 463 P.2d 622 (1970) (this Court refused to "lift the corporate veil" and observe that in fact there was only one corporation). *See also Municipality of Metro Seattle*, 57 Wn.2d at 454 ("a metropolitan municipal corporation shall be governed by a metropolitan council composed of . . . [members] selected by, and from, the mayor and city council of each of such cities.").

[37]While Appellants mention due process they cite no authority beyond the constitutional provision in support of their argument.

[38]*See Malim v. Benthien*, 114 Wash. 533, 539, 196 P. 7 (1921) (statute invalid where a diking district was permitted to tax properties outside the district's geographical boundaries). *See also State ex rel. Tax Comm'n v. Redd*, 166 Wash. 132, 6 P.2d 619 (1932).

The Act, RCW 27.15.030, does not provide for election of the governing body of the Library Facility Area. Instead, the governing body is composed of three county councilmembers appointed by all five members of the County Council. It is true the possibility exists that none of the three council members appointed would come from the district or districts in which the library facility is to be located. But that conclusion rests solely upon conjecture. RCW 27.15.030 provides:

> The governing body of the library capital facility area shall be three members of the county legislative authority from each county in which the library capital facility area is located. In counties that have more than three members of their legislative body, the three members who shall serve on the governing body of the library capital facility area shall be chosen by the full membership of the county legislative authority. Where the library capital facility area is located in more than one county, a county may be represented by less than three members by mutual agreement of the legislative authorities of the participating counties.

The United States Supreme Court has declared the right of suffrage to be a fundamental constitutional right.[39] Citing *Board of Estimate v. Morris*, Appellants contend that if a governing body exercises legislative functions, it must be elected with the guaranties of due process, equal protection and the right of suffrage.[40] However, in *Morris* the Supreme Court addressed only the issue of elected bodies and not the issue of appointed governing bodies.

In this case, the taxpaying voters have authorized the Library Facility Area to incur $1.6 million in principal indebtedness and have authorized the sale of bonds subject to an interest rate to be set by the governing body. Appellants argue there is no limit on the rate of interest and consequently no limit on the total debt. The governing

[39]*Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964).

[40]*See Board of Estimate v. Morris*, 489 U.S. 688, 692-96, 109 S. Ct. 1433, 103 L. Ed. 2d 717 (1989).

body of the Library Facility Area will be imposing taxes on the debt approved by the taxpayers and additionally would determine the interest rate. Appellants argue that, to the extent the total debt exceeds the $1.6 million approved by the taxpayers, the governing body in imposing a tax would be performing a legislative function. According to Appellants, legislation which delegates the ultimate tax levy decision to officials who might not be elected by all subject to the tax constitutes "taxation without representation" in violation of the Constitution.

Respondent claims the Act satisfies the taxpayers' right of suffrage because both the creation of the Library Facility Area and its taxing power were subject to approval of all voters within the Library Facility Area; and that all the property owners subject to taxes imposed upon them because of formation of the Library Facility Area did have an opportunity to vote for or against it. They also claim the voters approved the ultimate amount of the proposed tax levy when they approved the levying of ad valorem property taxes in an amount necessary to pay for and retire the bonds, principal and interest included.[41]

Respondent argues the proposition approved by the voters significantly limits the governing body's exercise of taxing power because the interest rate, according to Respondent, is determined by the market with the governing body's function being merely to "approve" the rate of interest. Respondent claims that even if the governing body did have the power to set interest rates, this is not a matter required to be submitted to the voters. In *Parkinson v. Seattle School Dist. No. 1*, this Court stated the "board of directors was not required to submit to the voters the question of the rate of interest which the bonds should bear,

---

[41]*But cf. Carkonen v. Williams*, 76 Wn.2d 617, 458 P.2d 280 (1969) (the Court found the levying of taxes to be a legislative function because the governing body had broad powers: the power to determine that a tax be imposed, to fix the amount, purpose, and subject of the exaction).

but was authorized to determine that question for itself."[42] This Court stated "[t]he law does not permit the board to delegate to popular vote the determination of matters not expressly conferred or enjoined by law."[43]

Respondent argues that the board adequately represents the interests of the taxpayers because designation of the county council members for the governing body is a result of the election process. It asserts that once the county council member is appointed to act as a member of the governing body, that person represents the voters of the Library Facility Area regardless of the district the council member actually represents. It further contends the governing body does not implicate the right of suffrage, since the requirement of equal representation does not apply to appointed officials.[44]

We conclude the Library Capital Facility Area Act properly conferred authority upon the Granite Falls Library Capital Facility Area, through its governing body, to issue bonds, and to levy excess property taxes on a yearly basis upon taxable property in the Library Facility Area at a rate sufficient to pay the principal and interest on the bonds. We find no violation of the constitutional guaranties of equal protection, due process or the right of suffrage.

*ATTORNEY FEES*

 Appellants request reasonable attorney fees under RCW 7.25.020, which allows recovery in an action to determine the validity of a bond issue. RCW 7.25.020 states in part:

> Upon the filing of the complaint the court shall, upon the application of the plaintiff, enter an order naming one or more taxpayers of such taxing district upon whom service in said action shall be made as the representative of all taxpayers of

[42]28 Wash. 335, 340, 68 P. 875 (1902).

[43]*Id.* (citing *Yesler v. City of Seattle*, 1 Wash. 308, 25 P. 1014 (1890)).

[44]*See Sailors v. Kent Bd. of Educ.*, 387 U.S. 105, 87 S. Ct. 1549, 18 L. Ed. 2d 650 (1967).

said district, except such as may intervene as herein provided, and in such case the court shall fix and allow a reasonable attorney's fee in said action to the attorney who shall represent the representative taxpayer or taxpayers as aforesaid, and such fee and all taxable costs incurred by such representative taxpayer or taxpayers shall be taxed as costs against the plaintiff[.]

Appellants have followed the requirements of the statute by appointment of Dallas B. Smith as the representative taxpayer and G. Douglas Ferguson and the Anderson Hunter Law Firm as attorneys for the representative taxpayer.[45]

Rule of Appellate Procedure 18.1(a) provides that this Court should grant attorney fees if the "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review[.]" While RCW 7.25.020 does not specifically address this level of review, it does authorize attorney fees. We therefore grant attorney fees to G. Douglas Ferguson and the Anderson Hunter Law Firm.

## SUMMARY AND CONCLUSIONS

A party challenging the constitutionality of a statute bears the burden of proving it is unconstitutional beyond a reasonable doubt.

In determining whether RCW Chapter 27.15, the Act authorizing creation of the Granite Falls Library Capital Facility Area as a separate quasi-municipal corporation with taxing authority, will result in uniform taxes as required by Article VII, Section 1 and Article VII, Section 9 of the Washington Constitution, the Court must first look to the statute. Under the plain language of the statute indicating the legislative intent that the Library Facility Area constitute the taxing authority, coupled with the express and implied powers granted a quasi-municipal

---

[45]Order Designating Representative Taxpayer and Appointing Attorneys for Representative Taxpayer, Snohomish County Superior Court Cause No. 96-2-04972-5 (July 10, 1996).

corporation, we conclude the Library Facility Area will be the true taxing authority. The parties under the stipulated facts agree that the taxes within the geographical boundaries of the Library Facility Area would be uniform.

Appellants have not established that the Act did not properly delegate taxing authority. They did not establish that the governing body of the Library Facility Area, which is made up of members of the Snohomish County Council, will in fact be acting in their capacity as county councilmembers instead of as the governing body of the Library Facility Area. They cite no authority to support their position that mere composition of the governing body places control of decisions of the Library Facility Area in the Snohomish County Council.

The Library Capital Facility Area Act and creation of the Granite Falls Library Facility Area do not violate the constitutional guaranties of equal protection, due process and right of suffrage.

Appellants are entitled to attorney fees under Rule of Appellate Procedure 18.1(a) which provides that this Court should grant attorney fees if the "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review[.]" While RCW 7.25.020 does not specifically address this level of review, it does authorize attorney fees. We therefore grant attorney fees to G. Douglas Ferguson and the Anderson Hunter Law Firm.

We affirm the Snohomish County Superior Court which found that the Library Capital Facility Area Act, chapter 27.15 RCW, was constitutional; that Respondent Granite Falls Library Capital Facility Area has the legal right and authority to sell and issue unlimited tax obligation bonds and that such bonds are valid; that Respondent is a separate municipal corporation and independent taxing authority with authority to levy taxes within the meaning of Article VII, Section 1 and Article VII, Section 2 of the Washington Constitution; and that the Act does not violate the constitutional guaranties of equal protection, due process and right of suffrage.

DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, and TALMADGE, JJ., concur.

SANDERS, J. (dissenting) — The issue here is whether the "governing body" of the Granite Falls Library Capital Facility Area performs a legislative function. If it does it quite obviously exercises an unconstitutional delegation of the taxing power because (1) the body is not democratically constituted and (2) the State Legislature has not provided procedural safeguards to control whatever arbitrary administrative action it might undertake.

I posit an unconstitutional delegation of taxing authority has occurred in this case based upon the following admission in the majority opinion:

> After issuance of the bonds, the governing body would levy excess property taxes on a yearly basis upon all the taxable property in the Library Facility Area at a rate sufficient to pay the principal and interest on the bonds. *The rate is substantially dependent upon, and would vary directly with, the rate of interest the governing body establishes to be paid on the bonded indebtedness.*

Majority at 831 (emphasis added).

The Legislature may not constitutionally grant the power of taxation to persons over whom the taxpayers can exercise no control. *State ex rel. Tax Comm'n v. Redd*, 166 Wash. 132, 141, 6 P.2d 619 (1932). Any delegation of the taxing power is impermissible unless the Legislature clearly defines the purpose of the delegation and creates procedural safeguards to control arbitrary administrative action. *Barry & Barry, Inc. v. State Dep't of Motor Vehicles*, 81 Wn.2d 155, 159, 500 P.2d 540 (1972).

*Malim v. Benthien*, 114 Wash. 533, 196 P. 7 (1921), provides an example of such an impermissible delegation. In *Malim* a diking district was organized and its boundaries fixed. A statute permitted the diking district to assess benefited properties lying outside the district's boundaries. Residents who lived outside the boundaries could not par-

ticipate in electing the officers of the diking district. The court explained that fundamental principles of fairness and free government forbid public officials from dictating policy or determining what money should be spent and how it would be spent when the residents have no voice in the selection of those officials. We held: "To uphold such a course would be a denial of the principle [prohibiting taxation without representation] upon which our government is founded, and which as a nation we have always maintained is the only true principle upon which a free government can be founded and maintained." *Malim*, 114 Wash. at 539. *See also Foster v. Sunnyside Valley Irrigation Dist.*, 102 Wn.2d 395, 406, 687 P.2d 841 (1984) (*Malim* found statute unconstitutional because residents outside the district could not vote for district officers.); *Carstens v. Public Util. Dist.*, 8 Wn.2d 136, 111 P.2d 583 (in *Malim* voters had no vote or voice relative to the imposition of taxes, resulting in taxation without representation), *cert. denied*, 314 U.S. 667, 62 S. Ct. 128, 86 L. Ed. 533 (1941); *King County Water Dist. No. 54 v. King County Boundary Review Bd.*, 87 Wn.2d 536, 554 P.2d 1060 (1976) (although a municipality managed a water district affecting those outside the city boundaries, adequate safeguards existed to protect those outside the city); *King County Water Dist. No. 75 v. City of Seattle*, 89 Wn.2d 890, 577 P.2d 567 (1978) (municipality's business and occupation tax could not be passed on to purveyors whose districts were outside city limits); *Weaver v. Recreation Dist.*, 328 S.C. 83, 492 S.E.2d 79, 81 (1997) (Commission given discretion to levy tax not exceeding five mills per annum. Such action was impermissible delegation and "taxation without representation."); *City of Sacramento v. Drew*, 207 Cal. App. 3d 1287, 255 Cal. Rptr. 704, 715 (1989) ("Imposition of an unlawful levy is a species of taxation without representation.").

This case resembles *Malim* and directly violates the constitutional prohibition against "taxation without representation." The taxpayers in the Granite Falls Library Capital Facility Area approved a debt not to exceed $1.6 million and authorized the sale of bonds to raise the funds,

subject to interest at the rate the governing body had the sole discretion to set. Once the interest rate is determined taxes must be levied sufficient to retire both the principal indebtedness and the accrued interest. Therefore the majority correctly states the tax rate "is substantially dependent upon, and would vary directly with, the rate of interest the governing body establishes to be paid on the bonded indebtedness." Majority at 831. However since the rate of interest is within the discretion of the governing body, the amount of the tax ultimately levied is also within its discretion. As such the governing body exercises sole control when it determines the ultimate amount of tax to be levied absent procedural safeguards.[46]

Because the governing body is vested with the power to tax, it must either be directly accountable to the taxpayers or limited by sufficient procedural safeguards. However neither is the case here. This governing body will consist of three members of the Snohomish County Council, and the three members are selected by the county council from its full membership, not by the voters of the library district.

Snohomish County is operated pursuant to a Home Rule Charter which provides that only those registered voters in a particular district are permitted to vote for candidates nominated in that district. Herein lies the problem. The vast majority of the Library Capital Facility Area lies within Snohomish County Council District No. 1. District No. 5 contains only small sparsely populated portions of the Library Capital Facility Area. *No* portion of the Library Capital Facility Area lies within Snohomish County Council District Nos. 2, 3, or 4. It is therefore possible that a member of the governing body, or any of the three members, may not be subject to election by the taxpayers.

While the majority examines whether the Legislature

---

[46]Similarly, Respondent suggests *Parkinson v. Seattle Sch. Dist.*, 28 Wash. 335, 68 P. 875 (1902), holds that once voters approve the principal amount of the bonds, the interest rate need not be submitted to voters. Majority at 841-42. *Parkinson* is easily distinguishable. In contrast to this case, the interest rate in *Parkinson* was capped at 10 percent per annum and the board of directors of the district was elected by the taxpayers and directly accountable to them.

defined its purpose when delegating the power to tax, it fails to address whether sufficient procedural safeguards exist to curb arbitrary action. But no legislated limits exist on setting the interest rate. The governing body has absolute discretion to set the rate and therefore the amount of tax. It also determines the general terms of issuance other than maximum maturity date and maximum debt. Further, Snohomish County allows residents to vote only for council members within their district. Taxpayers living within the Library Capital Facility Area cannot recall or vote out of office members of the Board unless the members live within the taxpaying voters' district.

Undoubtedly George III had some worthy projects in mind in the 1770s, but taxation without representation was not popular with the colonists then and is unconstitutional today. The importance of prohibiting taxation without representation carries with it the "stamp of history" upon which our country was founded and continues to flourish.[47] *City of Sacramento*, 255 Cal. Rptr. at 715.

Thus, this Governing Body, a nonrepresentative body,

---

[47]The constitutional prohibition against taxation without representation was first articulated in America by the early colonists. JOHN C. MILLER, ORIGINS OF THE AMERICAN REVOLUTION 25, 31, 138, 212-13, 215, 220 (1943). Great Britain's imposition of the Stamp Act in 1765 and other revenue-raising measures sparked a revolutionary protest that "taxation without representation is tyranny." Gregory C. Sisk, *Questioning Dialogue by Judicial Decree: A Different Theory of Constitutional Review and Moral Discourse*, 46 RUTGERS L. REV. 1691, 1720 n.100 (1994) (citing ROBERT MIDDLEKAUF, THE GLORIOUS CAUSE 76-93 (1982)).

The British response to the colonists' charge was that the colonists were represented in Britain's Parliament to the same extent as other subjects. Britain reasoned that members of Parliament represented the entire nation, rather than the particular constituency who elected them. Parliament, as opposed to the people, ruled Great Britain. Deborah A. Ballam, *The Evolution of the Government-Business Relationship in the United States: Colonial Times to Present*, 31 AM. BUS. L.J. 553, 571 (1994).

However, the colonists rejected the notion of virtual representation and "no taxation without representation" became the rallying cry of the American Revolution. The colonists believed public officials should serve as "liaisons for the people" because sovereignty resided in the citizenry. By consenting to a system of government, citizens agreed to delegate sovereign power to the state, subject to the right of the people to choose and remove public officers. BERNARD BAILYN, THE IDEOLOGICAL ORIGINS OF THE AMERICAN REVOLUTION 167-74 (1967). *See also Nevada v. Hall*, 440 U.S. 410, 99 S. Ct. 1182, 59 L. Ed. 2d 416 (1979). This right was so important to the Framers that they staked a revolution, as well as their lives, upon it. JOHN C. MILLER, ORIGINS OF THE AMERICAN REVOLUTION 25, 31, 138, 212-13,

does indeed possess the sole discretion to determine the interest rate and, in consequence, may determine without legislated standard the ultimate tax to be imposed upon the residents of the Granite Falls Library Capital Facility Area. Such violates the essence of the constitutional prohibition against "taxation without representation." I therefore dissent.

MADSEN and ALEXANDER, JJ., concur with SANDERS, J.

215, 220 (1943). *See also In re Brooks*, 57 Wn.2d 66, 79, 355 P.2d 840 (1960) (referring to the "colonists [who] believed so strongly that there should be no taxation without representation that they went to prison rather than pay certain taxes"), *cert. denied*, 365 U.S. 813, 81 S. Ct. 694, 5 L. Ed. 2d 692 (1961).

The premise of "no taxation without representation" is no less viable now as it was at the time of the American Revolution. Any power delegated by the people remains subject to their ultimate control. This principle is enshrined in our State Constitution which provides:

All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights.

WASH. CONST. art. I, § 1. The court has explained the power to tax serves as the most important of governmental powers. For

"[t]he power of taxation is, of all the powers of government, the one most liable to abuse, even when exercised by the direct representatives of the people, and if committed to persons who may exercise it over others without reference to their consent, the certainty of its abuse would be simply a question of time . . . ."

*State ex rel. Tax Comm'n v. Redd*, 166 Wash. 132, 141, 6 P.2d 619 (1932) (citation omitted).